No. 25-1855

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL
CARTER, SR., deceased

Plaintiff-Appellant

v.

## RANDELL WEST AND MACON COUNTY SHERIFF'S DEPARTMENT

Defendants-Appellees

Appeal from the U.S. District Court
Central District of Illinois
Case No. 16-cv-02221
The Honorable Judge Colin Stirling Bruce

## BRIEF OF PLAINTIFF-APPELLANT FELITA MCGEE,
## as Independent Administrator of the
## Estate of MICHAEL CARTER, SR, deceased

LAW OFFICES OF RAHSAAN A. GORDON
Attorney for Plaintiff-Appellant

Rahsaan A. Gordon
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 422-9500
Facsimile: (312) 422-9507
rg@attorneygordon.com

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, counsel for Plaintiff-Appellant FELITA MCGEE states as follows:

1. The full name of every party that the undersigned attorneys represented in this case is: FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., deceased

2. The names of all law firms and the partners and associates that appeared for the party now represented by us in the trial court or are expected to appear in this Court are:

   > Rahsaan A. Gordon
   > LAW OFFICES OF RAHSAAN A. GORDON
   > 77 West Wacker Drive, Suite 4500
   > Chicago, Illinois 60601
   > Telephone: (312) 422-9500
   > Facsimile: (312) 422-9507

3. The parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by the attorneys: N/A.

RESPECTFULLY
SUBMITTED,

/s/ Rahsaan A. Gordon
Counsel of Record for
Plaintiff-Appellant

Rahsaan A. Gordon
LAW OFFICES OF RAHSAAN A. GORDON
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 422-9500
Facsimile: (312) 422-9507

**TABLE OF CONTENTS**

DISCLOSURE STATEMENT ................................................................................ i

TABLE OF CONTENTS ....................................................................................ii

TABLE OF AUTHORITIES ...............................................................................iv

I.  JURISDICTION AND STANDARD OF REVIEW.................................................1

II.  ISSUES PRESENTED FOR REVIEW.................................................................2

III.  STATEMENT OF THE CASE .......................................................................3

IV.  SUMMARY OF THE ARGUMENT..................................................................9

V.  ARGUMENT................................................................................................10

    A.  The Record Permitted a Jury to Find Municipal
       Liability Under *Monell*.......................................................10

        1)  The Structural Policy Gap Was Undisputed................................11

        2)  A Jury Could Find the Risk Obvious in Custody.........................12

        3)  The Record Permitted an Inference of
           Deliberate Indifference..............................................13

        4)  The Evidence Permitted a Finding of
           Moving-Force Causation...............................................14

        5)  Rule 50 Improperly Resolved Jury Questions...........................15

    B.  The Rule 50 Ruling Improperly Resolved Inferential
       Questions Reserved for the Jury.......................................16

        1)  Plaintiff's Structural Theory Was Consistent
           Throughout the Proceedings..........................................18

        2)  The Rule 50 Ruling Followed the Narrowing of the
           Structural Record....................................................19

    C.  The Exclusion of Plaintiff's Correctional Healthcare
       Experts Was an Abuse of Discretion and Affected the

*Monell* Determination…………………………………………………..…20

    1)    Standard of Review……………………………….…………….…21

    2)    The Court Misapplied Rule 702's Helpfulness Requirement……………………………………………………...21

    3)    The Rule 403 Balancing Was Legally Erroneous………………..22

    4)    The Exclusion Was Categorical and Grounded in Doctrinal Concerns…………………………………………….23

    5)    The Exclusion Directly Undermined the Moving-Force Element……………………………………………24

    6)    The Error Was Not Harmless………………………………………25

D.    The Jury Instruction on Illinois Battery Incorporated Inapplicable Federal Qualified-Immunity Doctrine…………………..…...25

    1)    Standard of Review…………………………………………….…..26

    2)    Illinois Willful-and-Wanton Conduct Is the Governing Standard……………………………………………….26

    3)    The Doctrines Are Analytically Distinct……………………….…..27

    4)    The Risk of Juror Confusion Was Substantial…………………...28

E.    The District Court Erred by Permitting Undisclosed Financial and Health-Condition Testimony That Invited Jury Sympathy and Contravened Seventh Circuit Law……………..…..29

F.    Cumulative Error…………………………………………………………..31

G.    Conclusion………………………………………………………………….31

CERTIFICATE OF COMPLIANCE ...................................................................... 33

CERTIFICATE OF SERVICE ............................................................................... 33

APPENDIX I …………………………………………………….(bound to Brief)

APPENDIX II…………………………………………………..(filed separately)

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397 (1997) ......................................10, 13-14

*Boyde v. California,* 494 U.S. 370, 380 (1990)……………………………………………..2

*City of Canton v. Harris*, 489 U.S. 378 (1989) ....................................................... 9-14

*Connick v. Thompson,* 563 U.S. 51 (2011) ..........................................................12-13

*Glisson v. Ind. Dep't of Corr.,* 849 F.3d 372 7th Cir. 2017) ..............9-10, 12-14, 20, 23

*Hoffman v. Tonnemacher, 593 F.3d 908 (7th Cir. 2010)* …....................................1, 26

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) .........1, 3, 5-6, 10, 14-15, 18-25, 31

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000) ........1, 10, 15-17, 19

**Statutes and Rules**

28 U.S.C. § 1291 ........................ ...............................................................................1

42 U.S.C. § 1983 ...................................................................................... 3, 5, 10, 25

745 ILCS 10/2-202 ................................................................................... 25-26

745 ILCS 10/9-102 ……………………………………………………………………….29

745 ILCS 10/1-210…………………………………………………………………………26

Fed. R. Civ. P. 50 ...................................................1-3, 5-6, 9-11, 15-20, 24-25, 28, 31

Fed. R. App. P. 32 .................................................................................................. 33

# I.   JURISDICTION AND STANDARD OF REVIEW

This civil action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. The district court had federal-question jurisdiction under 28 U.S.C. § 1331 and civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3)–(4). To the extent Plaintiff asserted Illinois state-law claims, the district court had supplemental jurisdiction under 28 U.S.C. § 1367(a).

On April 16, 2025, the district court entered judgment as a matter of law in favor of one defendant pursuant to Federal Rules of Civil Procedure Rule 50.  On April 23, 2025, the district court entered final judgment disposing of all claims (App. I at 47 (R.385)). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

Plaintiff timely filed her notice of appeal on May 16, 2025 (App. I at 48 (R.388)), within 30 days after entry of judgment. Fed. R. App. P. 4(a)(1)(A).

The Rule 50 ruling is reviewed de novo. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). The reviewing court must view the evidence in the light most favorable to the nonmovant, draw all reasonable inferences in her favor, and refrain from weighing evidence or resolving credibility disputes. Judgment as a matter of law is proper only if a reasonable jury would not have a legally sufficient evidentiary basis to find for the nonmovant. *Id.*

The exclusion of expert testimony is reviewed for abuse of discretion. To the extent the ruling rests on interpretation of Federal Rules of Evidence 702 or 403, legal determinations are reviewed de novo.

Whether jury instructions accurately state the governing law is reviewed de novo. *Hoffman v. Tonnemacher*, 593 F.3d 908, 912 (7th Cir. 2010). An instructional

error warrants reversal if there is a reasonable likelihood that the jury applied an incorrect legal standard. *Boyde v. California*, 494 U.S. 370, 380 (1990)

## II.    ISSUES PRESENTED FOR REVIEW

1.    Whether, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Macon County operated its jail without coordinated safeguards for chronic-disease management and emergency medical escalation—including the admitted absence of written diabetic protocols and emergency-transport procedures—and that this systemic policy gap made serious medical harm a highly predictable consequence sufficient to support municipal liability under Monell.

2.    Whether the district court erred under Federal Rule of Civil Procedure 50 by granting judgment as a matter of law after drawing competing inferences against Plaintiff and reweighing structural evidence, despite having previously determined the same record sufficient for jury consideration, thereby displacing the jury's role on deliberate indifference and moving-force causation.

3.    Whether this Court's prior qualified-immunity ruling concerning individual correctional officers precludes municipal liability where Plaintiff's claim rests on institutional policy omissions and systemic design failures rather than the personal culpability of the immune officers.

4.    Whether the district court abused its discretion by excluding Plaintiff's correctional healthcare experts under Rule 403 on "confusion" grounds—rather than Rule 702 reliability—thereby materially impairing Plaintiff's ability to present

foreseeability and moving-force evidence central to a structural Monell theory and contributing to the Rule 50 disposition.

5. Whether the district court erred by instructing the jury on Plaintiff's Illinois battery claim using federal qualified-immunity and medical-deference language drawn from the prior § 1983 decision, over objection, thereby risking confusion regarding Illinois's willful-and-wanton standard and affecting the verdict.

6. Whether the district court erred by permitting Defendant West to present evidence of his personal financial condition and health status—without clarifying indemnification and in a manner untethered to the governing damages framework—thereby inviting improper sympathy and distorting the jury's consideration of liability and damages.

## III. STATEMENT OF THE CASE

### A. Nature of the Case

Plaintiff Felita McGee brought this action under 42 U.S.C. § 1983 and Illinois law arising from the death of Michael Carter, Sr., while detained at the Macon County Jail. (R.31.) As relevant here, Plaintiff's amended complaint alleged a municipal-liability claim against Macon County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), based on alleged policies, practices, and omissions governing medical care at the jail, and also asserted an Illinois battery claim against Deputy Randell West. (R.31.)

### B. Procedural History

After discovery, Macon County moved for summary judgment on Plaintiff's *Monell* claim and certain correctional officers moved for summary judgment on qualified-immunity grounds.

On July 20, 2020, the district court denied summary judgment on the *Monell* claim. (App. II at 20 (R.252).) The court recognized that the record reflected evidence of systemic deficiencies, not merely individual error. It noted that "DMH admits there were 'no policies related to health care at the jail during the relevant timeframe in 2015.'" (App. II at 26 (R.252 at 41).)

The court identified evidence concerning, among other things, the absence of a diabetic management protocol, confusion regarding ambulance authority, and LPNs operating without structured supervision safeguards. (App. II at 28–31 (R.252 at 43–46).) It concluded that a reasonable factfinder could determine there was "a policy at issue rather than a random event," and that a jury could find the unconstitutional consequences "plainly obvious." (App. II at 29–30 (R.252 at 44–45).)

The court further observed that Plaintiff's correctional healthcare expert's "report supports Plaintiff's argument that failure to develop appropriate policies and train the necessary parties resulted in Carter's death." (App. II at 29 (R.252 at 44).) Plaintiff disclosed correctional-health experts, Nurse Kim Pearson and Dr. Chad Zawitz, both prepared expert reports. (R. 219-3 and R. 219-4)

Pearson's report addressed the structure of medical services at the jail, including contract provisions requiring, among other things, registered-nurse

4

presence, staff training consistent with National Commission on Correctional Health Care ("NCCHC") standards, quarterly reporting to the Sheriff, and a deputy-training program; the report stated that deposition testimony and the produced record did not reflect compliance with those provisions. (App. II 10–12 (Pearson report excerpt); see also R.219-3.)

Dr. Zawitz's report addressed, among other matters, the medical risks posed by deficient policies and procedures governing diabetes chronic care and emergency response. (App. II 16–19 (Zawitz report excerpt); see also R.219-4.)

The district court denied qualified immunity, and the officers filed an interlocutory appeal. In *McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022), this Court reversed the denial of qualified immunity and remanded for further proceedings. Id. at 575.

On remand, Plaintiff's *Monell* claim and the Illinois battery claim against Deputy West proceeded toward trial.

Before trial, the district court granted motions in limine excluding Plaintiff's correctional-health experts. (App. II at 44, 48 (R.352; R.363).) The court also addressed the basis for exclusion on the record at the outset of trial. (App. II at 61–73 (Tr. Vol. 1 at 22–34).) Excerpts of Plaintiff's correctional-health experts' reports are included in Appendix II. (App. II at 2, 16.) Plaintiff also tendered proposed limited questions in an effort to present restricted testimony, which the court denied. (App. II at 51 (R.365).)

A jury trial commenced in April 2025. During trial, the district court addressed the scope of the issues in light of this Court's prior qualified-immunity decision in *McGee v. Parsano*. In ruling on evidentiary matters, the court stated that, following the Seventh Circuit's reversal, certain lines of questioning would not be permitted. (Tr. Vol. 2 at 235–239.)

At the close of Plaintiff's case-in-chief, Macon County moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on the *Monell* claim. The district court granted the motion. (App. I at 12 (R.376).)

The Illinois battery claim against Deputy West was submitted to the jury. During the instruction conference, Plaintiff objected to the court's formulation of the battery instruction. (App. II at 120–123 (Tr. Vol. 6 at 934–937).) The jury returned a verdict in favor of Deputy West. (App. II at 58 (R.383).)

The district court entered final judgment on April 23, 2025. (App. I at 47 (R.385).) Plaintiff filed a notice of appeal on May 16, 2025. (App. I at 48 (R.388).)

### C. Statement of Facts

*Relevant Institutional Structure and Trial Evidence*

The parties stipulated that, in 2011, the Macon County Sheriff's Department entered into a contract with medical contractor Decatur Memorial Hospital ("DMH") to provide health-care management services to detainees at the Macon County Jail. (App. II at 74 (Tr. Vol. 1 at 66).)

Sheriff Thomas Schneider testified that, at the time of contracting, he did not know whether DMH had any prior experience providing health care under contract in a correctional setting. (Tr. Vol. 1 at 127.)

The parties further stipulated that DMH assigned Dr. Robert Braco as medical director at the jail, and that Braco was the only doctor assigned to the jail for six years and was required to be on call 24 hours a day, seven days a week. (App. II at 74 (Tr. Vol. 1 at 66–67).)

The parties also stipulated that, in 2015, the jail had no written policies, protocols, or procedures for (1) treatment of pretrial detainees who reported as diabetic and (2) coordination of emergency transport for detainees in need of emergency medical care, and that the jail had no written policy informing jail and medical staff who was authorized to call an ambulance and under what circumstances. (App. II at 74–75 (Tr. Vol. 1 at 67–68).)

Trial testimony addressed the absence of diabetes-specific safeguards during the relevant period. Schneider testified that there was "nothing specifically set up" for a detainee who was diabetic, and he confirmed that the jail had no diabetes-related written policies, protocols, or procedures during his tenure, including in 2011, 2012, 2013, 2014, and 2015. (App. II at 77–79 (Tr. Vol. 1 at 151–153).)

Schneider further testified that he did not speak with DMH about the fact that there were no diabetes-related policies, protocols, or procedures from 2011 through 2015, and he explained that he did not address the absence of such written policies with DMH because no issues had come up. (App. II at 80 (Tr. Vol. 1 at 154).)

7

Former DMH administrator Debbie Acciavatti testified that, before the relationship with the Macon County Sheriff's Department began around 2011, DMH had not provided health-care services pursuant to contract inside of a correctional setting. (App. II at 90 (Tr. Vol. 3 at 381).)

Linda Fahey—produced as DMH's corporate representative regarding healthcare delivery at the jail—testified that she was the person "most knowledgeable about the policies and protocols, in this case," including the period of 2011 through 2015. (App. II at 109 (Tr. Vol. 4 at 722).) Fahey further testified that there were "no health care policies" she was aware of at the jail and that there were no diabetes protocols she was aware of. (App. II at 110 (Tr. Vol. 4 at 723).)

Jail intake supervisor Michael Patton testified that he had not been trained by DMH or medical staff regarding how to identify medical conditions at intake that would warrant reaching out to medical staff, and he was not aware of any such training being provided. (Tr. Vol. 4 at 645–648.)

*Carter's Detention and Death*

The parties stipulated that Michael Carter, Sr. was arrested and booked into the Macon County Jail on July 13, 2015. (App. II at 74–75 (Tr. Vol. 1 at 67).) A jail nurse documented that Carter had been complaining of nausea and vomiting since July 15. (App. II at 75 (Tr. Vol. 1 at 67).) On July 18, the morning of Carter's death, he was transported in a wheelchair to a segregated housing area known as "Deadlock." (App. II at 75 (Tr. Vol. 1 at 67).)

The parties stipulated that while Carter was in Deadlock, his blood glucose was tested and registered at or above the glucometer's maximum measurement of 500 mg/dL, and that he was tested again nearly an hour later and it again read 500 mg/dL (maximum measurement). (App. II at 75 (Tr. Vol. 1 at 67–68).) The parties stipulated that, while in the Deadlock cell, Carter lost consciousness and was found to have no pulse at around 11:40 a.m., and the medical examiner ruled the cause of death as diabetic ketoacidosis. (App. II at 75 (Tr. Vol. 1 at 68).)

*July 18th Encounter with Deputy West*

During the July 18 encounter, surveillance video captured Deputy West placing his foot on Carter's hand, while applying his body weight. West testified that he intentionally applied the maneuver to determine whether Carter was "faking." (Tr. Vol. 2 at 212–214.)

## IV.    SUMMARY OF THE ARGUMENT

This appeal arises from a custodial death that a jury was never permitted to fully evaluate. Plaintiff proceeded under a structural municipal-liability theory recognized in *City of Canton* and *Glisson*—not respondeat superior—alleging that Macon County operated its jail without coordinated safeguards for chronic-disease management or emergency medical escalation.

The County stipulated that no written diabetic protocols or emergency-transport procedures existed. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that this policy gap made serious medical harm highly predictable.

9

The district court nevertheless granted Rule 50 judgment by reweighing inferences and removing deliberate indifference and moving-force causation from the jury. It compounded that error by excluding Plaintiff's correctional healthcare experts under Rule 403 on "confusion" grounds, materially impairing proof of foreseeability and causation.

The court further instructed the jury on Illinois battery using federal qualified-immunity language, risking doctrinal confusion. It also permitted improper financial-condition testimony despite indemnification.

Even if no single ruling independently warrants reversal, their cumulative effect deprived Plaintiff of a fair trial.

## V.    ARGUMENT

### A.    The Record Permitted a Jury to Find Municipal Liability Under *Monell*

Municipal liability under 42 U.S.C. § 1983 attaches when a constitutional deprivation results from an official policy, an established custom, or a deliberate decision not to adopt necessary safeguards. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Although liability based on inaction occupies a narrow range of circumstances, deliberate indifference may be inferred where policymakers disregard an obvious need for safeguards and the resulting injury is a highly predictable consequence of that omission. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). This Court has recognized that in custodial settings, the absence of coordinated care mechanisms

10

for managing chronic illness may itself constitute actionable policy. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381–82 (7th Cir. 2017) (en banc).

At the Rule 50 stage, the inquiry is limited. The court must determine whether the evidence, viewed in the light most favorable to Plaintiff, would permit a reasonable jury to find municipal liability. It may not weigh evidence or resolve competing inferences. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

Under that standard, the *Monell* claim should have been submitted to the jury. The claim was that a policy gap and uncoordinated system for managing diabetic detainees, inter alia, constituted deliberate indifference, and that this systemic omission was the moving force behind Mr. Carter's injury. Because the *Monell* claim was removed under Rule 50, the evidence must be viewed in the light most favorable to Plaintiff, and all reasonable inferences must be drawn in her favor. Id.

This Court reviews de novo a grant of judgment as a matter of law under Rule 50(a), viewing the evidence in the light most favorable to the nonmovant.

### 1. The Structural Policy Gap Was Undisputed

The baseline institutional omission was not contested. The parties stipulated that in 2015 the jail had no written policies or protocols governing the treatment of detainees who reported as diabetic and no written policy defining who was authorized to call an ambulance or coordinate emergency transport. (App. II at 74–76 (Tr. Vol. 1 at 66–68).)

11

Sheriff Schneider confirmed that during his tenure from 2011 through 2015 there was "nothing specifically set up for a person that was diabetic." (App. II at 77 (Tr. Vol. 1 at 151).) He agreed that no diabetic-specific safeguards existed and that he did not require their development. (App. II at 78–81 (Tr. Vol. 1 at 152–155).)

From these admissions and stipulations, a reasonable jury could conclude that the absence of coordinated intake, monitoring, and escalation safeguards was systemic rather than incidental. Under *Monell*, sustained institutional omissions may constitute municipal policy where they reflect deliberate choice. 436 U.S. at 690–91.

### 2.     A Jury Could Find the Risk Obvious in Custody

Municipal fault may be inferred where policymakers confront a risk so obvious that failure to act reflects deliberate indifference. *Canton*, 489 U.S. at 390. In custodial environments, where detainees are wholly dependent on institutional systems, failures of coordination can themselves create constitutional risk. *Glisson*, 849 F.3d at 381–82.

Insulin-dependent diabetes is a recurring and potentially life-threatening condition in jail populations. Detainees cannot obtain insulin, monitor blood glucose, or seek outside medical care on their own. The jail controls intake notification, physician access, monitoring frequency, and emergency transport decisions.

The record permitted a jury to find that no structured intake trigger required physician review or scheduled glucose monitoring when a detainee disclosed insulin

dependence. Blood glucose testing depended on discretionary physician orders rather than an automatic chronic-care pathway. (Tr. Vol. 2 at 311–312.) No written emergency protocol defined who must call an ambulance or under what clinical thresholds. (App. II at 75–76 (Tr. Vol. 1 at 67–68).)

In that custodial context, the absence of coordinated intake-to-monitoring-to-escalation safeguards presented a risk that was not speculative but inherent in the institutional design. A jury could conclude that crisis-level deterioration was a highly predictable consequence of leaving management of a recurring, life-threatening condition to ad hoc discretion.

        3.      The Record Permitted an Inference of Deliberate Indifference

Municipal liability for failure to act without a prior pattern is "rare," but it is not foreclosed. *Connick v. Thompson*, 563 U.S. 51, 64 (2011). The Supreme Court has recognized a narrow class of cases in which the need for safeguards is so obvious, and the risk of constitutional injury so predictable, that deliberate indifference may be inferred even absent prior violations. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). Connick does not control this case. There, the Court rejected single-incident failure-to-train liability where licensed prosecutors were presumed equipped to make complex legal judgments, and the alleged deficiency concerned the depth and format of professional training. 563 U.S. at 64–66.

By contrast, this Court in *Glisson v. Indiana Department of Correction* held that an institutional decision not to implement coordination safeguards for

chronically ill inmates may itself constitute actionable policy where the risk is inherent in the custodial setting. 849 F.3d 372, 381–82 (7th Cir. 2017) (en banc).

This case aligns with *Glisson*, not Connick. The County stipulated that in 2015 the jail had no written diabetic protocols, no written emergency-transport procedures, and no written policy identifying who was authorized to call an ambulance. (App. II at 74–76 (Tr. Vol. 1 at 66–68).) Sheriff Schneider confirmed that no diabetic-specific safeguards existed and that he did not require their development. (App. II at 77–81 (Tr. Vol. 1 at 151–155).) These omissions persisted for years.

An insulin-dependent detainee cannot self-administer insulin, monitor glucose, or seek outside care; the institution controls intake, monitoring, and escalation. The omission here was not a marginal training refinement. It was the absence of basic, coordinated safeguards for a recurring, life-threatening condition in a setting where detainees are wholly dependent on institutional systems. A reasonable jury could conclude that leaving that risk to unstructured discretion reflects deliberate indifference under *Canton* and *Glisson*.

Whether those admitted structural gaps amounted to conscious disregard of an obvious custodial risk was a question for the jury.

4. The Evidence Permitted a Finding of Moving-Force Causation

*Monell* liability also requires proof that the policy or omission was a moving force behind the constitutional injury. *Brown*, 520 U.S. at 404. The record supported a non-speculative causal inference. Carter entered the jail on July 13 as a known

14

insulin-dependent diabetic. No policy required automatic physician notification, scheduled glucose monitoring, or defined escalation thresholds. (Tr. Vol. 2 at 311–312.)

The summary-judgment record reflects no documented glucose monitoring during the first several days of incarceration. (R.252 at 13–18.) On July 18, his glucose level registered at or above the glucometer's maximum, and emergency transport occurred only after that crisis-level deterioration. (R.252 at 21–23.)

The district court acknowledged expert testimony that earlier recognition and intervention likely would have altered the outcome. (R.252 at 24–26, 41–44 (excerpting R.252 at 41–44 at App. II at 26–29).)

From this timeline and the stipulated absence of coordinated safeguards, a reasonable jury could infer that progressive hyperglycemia went undetected because no intake-triggered monitoring or defined escalation mechanism existed. Under Brown, the relevant inquiry is whether the injury was a highly predictable consequence of the structural omission. 520 U.S. at 409. On this record, jurors could reasonably conclude that it was.

Rule 50 does not permit a court to reject that inference merely because competing interpretations are possible.

### 5. Rule 50 Improperly Resolved Jury Questions

The district court had previously recognized that the record permitted a jury to determine that a policy was at issue and that the consequences of the systemic

deficiencies could be found "plainly obvious." (App. II at 29–30 (R.252 at 44–45).) Nothing presented at trial eliminated those structural admissions.

Whether the admitted policy gaps constituted deliberate indifference and were a moving force behind Carter's death required drawing inferences about foreseeability, institutional design, and causation. Reasonable jurors could disagree. Under *Reeves*, that is dispositive. 530 U.S. at 150–51.

By granting Rule 50, the district court necessarily substituted its own assessment of the evidence for that of the jury. Rule 50 does not permit such substitution where competing reasonable inferences exist.

Because the evidence, viewed in Plaintiff's favor, permitted a reasonable jury to find municipal liability under established *Monell* principles, the claim should have been submitted to the jury.

### B. The Rule 50 Ruling Improperly Resolved Inferential Questions Reserved for the Jury

A judgment as a matter of law under Rule 50 is appropriate only where "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmovant. Fed. R. Civ. P. 50(a). In reviewing such a ruling, courts must view the evidence in the light most favorable to the nonmovant, draw all reasonable inferences in that party's favor, and refrain from weighing the evidence or resolving credibility disputes. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

The Rule 50 ruling here did not rest on an absence of evidence. It rested on the district court's assessment that the structural omissions were insufficiently

grave to constitute deliberate indifference and insufficiently connected to Carter's death to satisfy causation. Those conclusions required resolving inferential questions that Rule 50 reserves for the jury.

The record included stipulated evidence that the jail lacked diabetic-specific policies and emergency-transport protocols. (App. II at 74–76 (Tr. Vol. 1 at 66–68).) The Sheriff admitted that this absence persisted for years and that he did not require development of such safeguards. (App. II at 77–81 (Tr. Vol. 1 at 151–155).) The evidence showed that Carter entered the jail as a known insulin-dependent diabetic, received no glucose monitoring during the first several days of incarceration, deteriorated to crisis-level hyperglycemia, and was transported only after that decompensation. (R.252 at 13–23.)

From this record, a reasonable jury could infer that the absence of coordinated safeguards created a foreseeable risk of delayed detection and escalation. A jury could further infer that earlier monitoring and defined escalation mechanisms would have altered the timing of intervention. Whether those inferences should be drawn is quintessentially a jury determination.

By granting Rule 50, the district court necessarily rejected those permissible inferences and substituted its own assessment of the record. But Rule 50 does not authorize a court to choose among competing reasonable interpretations of the evidence. *Reeves*, 530 U.S. at 150–51. The sufficiency inquiry is not whether the court finds the structural omissions compelling; it is whether reasonable jurors could find them constitutionally significant.

This case did not turn on speculation. It involved admitted policy gaps, acknowledged policymaker awareness, documented medical deterioration, and evidence that earlier intervention likely would have altered the outcome. The deliberative question—whether the risk was obvious, whether sustained inaction reflected conscious disregard, and whether the omissions were a moving force behind the delay—was inferential in nature. Inferential questions of that kind belong to the jury.

The procedural history underscores the point. The district court twice concluded that the same structural evidence was sufficient to proceed to trial. (R.252; R.301.) Nothing presented at trial eliminated those admissions or altered the structural baseline. A Rule 50 ruling cannot rest on a reevaluation of evidence previously deemed jury-triable absent a material change in the record.

Under de novo review, the question is whether reasonable jurors could differ. Because they could, the Rule 50 judgment must be reversed and the Monell claim restored for jury determination.

1. Plaintiff's Structural Theory Was Consistent Throughout the Proceedings

From the Amended Complaint forward, Plaintiff advanced a structural *Monell* theory: that Macon County operated its jail without coordinated safeguards necessary to manage chronic illness and escalate medical emergencies in custody. (R.31 ¶¶ 70–89.) The claim was not framed as respondeat superior or as isolated negligence, but as systemic omission—absence of diabetic protocols, lack of intake-triggered monitoring, and failure to define emergency-transport authority.

At summary judgment, Plaintiff reiterated that the *Monell* claim rested on institutional design and policy gaps. (R.214 at 1–2, 95–104.) The district court denied summary judgment, recognizing evidence of "no policies related to health care at the jail," no clear diabetic management protocol, and confusion regarding ambulance authority. (App. II at 27–31 (R.252 at 42–46).) The court concluded that a reasonable jury could determine that "a policy at issue rather than a random event" caused the harm and that the consequences of the systemic deficiencies could be found "plainly obvious." (App. II at 29–30 (R.252 at 44–45)).

After this Court's qualified-immunity decision concerning the individual officers, the district court denied reconsideration and reaffirmed that the *Monell* claim survived because it was grounded in the County's policies—or lack thereof—not derivative liability. (App. II at 38–39 (R.301 at 7–8)).

At trial, when the court questioned the contours of the *Monell* theory outside the jury's presence, Plaintiff clarified that the claim concerned "a complete lack of coordinated care" and "a lack of a coordinated system of health care." (Tr. Vol. 4 at 575–576.) The theory remained structural and institutional.

The Rule 50 ruling did not correct a shifting or undeveloped claim. It removed from the jury the same structural *Monell* theory that had been pleaded, defended at summary judgment, reaffirmed after remand, and articulated at trial.

> 2.     The Rule 50 Ruling Followed the Narrowing of the
>        Structural Record

The Rule 50 disposition did not occur in a vacuum. It followed the court's categorical exclusion of Plaintiff's correctional healthcare experts, whose testimony

19

addressed institutional coordination and medical causation central to the *Monell* theory. Having narrowed the structural and clinical context through which the jury could evaluate foreseeability and moving-force causation, the court then concluded that the remaining evidence was insufficient as a matter of law.

While the evidentiary ruling is addressed separately, its practical effect underscores the impropriety of resolving inferential questions under Rule 50. Where institutional context and causation testimony are restricted, and the sufficiency determination turns on those very inferential gaps, the court risks substituting its judgment for that of the jury.

Under Rule 50 and Reeves, such substitution is impermissible.

### C. The Exclusion of Plaintiff's Correctional Healthcare Experts Was an Abuse of Discretion and Affected the Monell Determination

The district court excluded the testimony of Plaintiff's correctional healthcare experts, Kim Pearson, R.N., and Dr. Chad Zawitz, concluding that their opinions would place an "expert gloss" on the evidence and risk blurring the distinction between *Monell* liability and respondeat superior. (Tr. Vol. 1, Apr. 8, 2025, at 23–25.)

The exclusion was not a Rule 702 reliability determination; it was expressly a Rule 403 ruling grounded in concern that the testimony would "confuse" the jury and "shove" the case toward respondeat superior. When Plaintiff sought clarification, the court stated unequivocally: "Those witnesses are out." (App. II at 64–65 (Tr. Vol. 1 at 25–26)).

The ruling did not rest on a finding of unreliability under Rule 702. Because the excluded testimony addressed institutional coordination and medical causation central to Plaintiff's *Monell* claim — a theory expressly recognized in *Glisson v. Indiana Department of Correction*, 849 F.3d 372, 381–82 (7th Cir. 2017) — and because the *Monell* claim was subsequently removed under Rule 50, the exclusion was not harmless.

### 1. Standard of Review

A district court's decision to exclude expert testimony is reviewed for abuse of discretion. To the extent the ruling rests on interpretation of Federal Rules of Evidence 702 or 403, legal determinations are reviewed de novo. Reversal is warranted where the exclusion affected the presentation of a central theory of liability or likely altered the outcome of the proceeding.

### 2. The Court Misapplied Rule 702's Helpfulness Requirement

Rule 702 permits expert testimony where it will assist the trier of fact in understanding the evidence or determining a fact in issue. The district court did not find that Pearson or Zawitz lacked qualifications, that their methodologies were unreliable, or that their opinions were unsupported by the record. Instead, it excluded the testimony because it believed the experts would "shove this case from a *Monell* case to a vicarious liability case" and place an "expert gloss" on the evidence. (App. II at 62–64 (Tr. Vol. 1 at 23–25).)

That rationale does not implicate reliability. It reflects concern about doctrinal framing.

21

Pearson's report addressed the structure of correctional healthcare systems, the absence of coordinated intake-to-monitoring safeguards, the lack of chronic-disease management protocols, and the consequences of relying on licensed practical nurses without defined supervisory structure. These subjects concern institutional design principles outside the common knowledge of lay jurors.

Zawitz's report addressed the physiological progression of untreated diabetic ketoacidosis and the timing at which intervention more likely than not would have prevented death. The medical mechanics of DKA progression — including the clinical significance of delayed insulin administration — are likewise beyond ordinary experience.

Expert testimony does not become inadmissible because it supports a structural *Monell* theory. *Monell* liability requires proof that a municipal policy or sustained inaction was a moving force behind the constitutional injury. Expert explanation of institutional safeguards and medical deterioration assists the jury in determining whether such a policy existed and whether it caused harm. The exclusion here rested not on Rule 702 unreliability but on apprehension that the testimony strengthened Plaintiff's theory. That is not a proper basis for exclusion.

### 3. The Rule 403 Balancing Was Legally Erroneous

The district court also concluded that the testimony's prejudicial effect outweighed its probative value. (App. II at 63–64 (Tr. Vol. 1 at 24–25).) The stated concern was that the jury might confuse *Monell* liability with respondeat superior

22

and intermingle the conduct of dismissed medical defendants with that of the County.

Rule 403 permits exclusion only where unfair prejudice substantially outweighs probative value. "Unfair prejudice" refers to an undue tendency to suggest decision on an improper basis. Evidence is not unfairly prejudicial merely because it is persuasive.

Pearson's and Zawitz's testimony did not introduce inflammatory content, propensity reasoning, or improper character evidence. Their opinions addressed institutional coordination and medical progression — matters directly relevant to foreseeability and moving-force causation. The court's concern that jurors might blur doctrinal boundaries is addressed through proper instructions on the elements of municipal liability, not by excluding otherwise probative expert analysis.

The Rule 403 ruling therefore functioned not as protection against unfair prejudice but as a doctrinal gatekeeping mechanism. That is not the role of Rule 403.

4.     The Exclusion Was Categorical and Grounded in Doctrinal Concerns

The transcript confirms that the exclusion was categorical. The court barred both experts entirely and declined to permit even a narrowed presentation limited to medical progression or damages. (App. II at 64–66 (Tr. Vol. 1 at 25–27).)

The stated rationale was that the testimony would "shove" the case into vicarious liability and confuse the jury regarding *Monell's* requirements. (App. II at 62–64 (Tr. Vol. 1 at 23–25)). But explaining how coordinated chronic-care systems

function and how untreated hyperglycemia deteriorates does not convert a *Monell* claim into respondeat superior. It provides context for evaluating whether policymakers left a recurring custodial risk unaddressed — precisely the theory this Court endorsed in Glisson.

Doctrinal clarity is achieved by instructing jurors on the elements of municipal liability, not by withholding expert testimony necessary to understand institutional design and causation.

> 5. The Exclusion Directly Undermined the Moving-Force Element

Plaintiff bore the burden of proving that the County's policy or omission was the moving force behind Carter's death.

Pearson's testimony addressed systemic coordination failures and structural design deficiencies within the jail's healthcare framework. Zawitz's testimony addressed the medical progression of untreated diabetic ketoacidosis and opined that timely intervention more likely than not would have prevented death.

Together, the excluded testimony supplied the institutional and medical bridge between policy omission and fatal deterioration.

The Rule 50 ruling rested on the conclusion that the record lacked sufficient evidence of foreseeability and moving-force causation. The excluded testimony addressed precisely those elements. By removing expert explanation of coordinated safeguards and physiological progression, the court narrowed the evidentiary basis upon which the jury could assess causal inference.

When testimony central to foreseeability and causation is excluded, and the court subsequently determines that those elements are insufficiently supported, the exclusion necessarily affects the sufficiency analysis.

### 6. The Error Was Not Harmless

An evidentiary ruling warrants reversal where it likely affected the outcome of the proceeding. Here, the *Monell* claim was removed from the jury under Rule 50. The excluded testimony went directly to the elements the court later found lacking.

The Rule 50 ruling relied on perceived inferential gaps regarding foreseeability and moving-force causation. The excluded testimony was designed to illuminate those very issues. Under these circumstances, there is more than a reasonable possibility that the exclusion altered the outcome of the *Monell* determination.

At minimum, the exclusion deprived the jury of expert context necessary to evaluate a structural *Monell* theory recognized by this Court. Reversal and remand for a new trial are required.

### D. The Jury Instruction on Illinois Battery Incorporated Inapplicable Federal Qualified-Immunity Doctrine

After granting Rule 50 on the *Monell* claim, the only issue submitted to the jury was Illinois battery against Deputy West. The governing standard was Illinois's willful-and-wanton framework under 745 ILCS 10/2-202. Over Plaintiff's objection, however, the court instructed the jury using language drawn verbatim from this Court's prior qualified-immunity decision in *McGee v. Parsano,* 55 F.4th 563 (7th Cir. 2022).

During the instruction conference, the court stated that the language was taken "straight from McGee" and copied "verbatim." (App. II at 120 (Tr. Vol. 6 at 934).) Plaintiff objected that the prior decision concerned federal § 1983 doctrine and qualified immunity—not Illinois battery. (App. II at 120–121 (Tr. Vol. 6 at 934–935)). The objection was overruled. (App. II at 122–123 (Tr. Vol. 6 at 936–937)).

The jury was then instructed that correctional officers "may trust jail medical professionals to provide inmates with appropriate medical care" and are not constitutionally obligated to override medical judgment unless they have reason to know that treatment is inadequate. (App. II at 124–125 (Tr. Vol. 6 at 968–969).) That language derives from the qualified-immunity analysis in *Parsano*, where it governed a federal Fourteenth Amendment deliberate-indifference claim.

The claim before the jury, however, was not a federal constitutional claim. It was Illinois battery.

### 1. Standard of Review

Whether jury instructions accurately state the governing law is reviewed de novo. *Hoffman v. Tonnemacher*, 593 F.3d 908, 912 (7th Cir. 2010). Instructions are evaluated as a whole to determine whether they fairly and adequately informed the jury of the applicable legal standard. *Id*. An instructional error warrants reversal where there is a reasonable likelihood that the jury applied an incorrect legal framework. *Boyde v. California*, 494 U.S. 370, 380 (1990).

### 2. Illinois Willful-and-Wanton Conduct Is the Governing Standard

Under the Illinois Tort Immunity Act, a public employee engaged in the execution or enforcement of law is liable only if his conduct constitutes willful and wanton behavior. 745 ILCS 10/2-202. Illinois defines willful and wanton conduct as either a deliberate intention to cause harm or an utter indifference to or conscious disregard for the safety of others. 745 ILCS 10/1-210.

The inquiry therefore focuses on the defendant's state of mind and the character of the conduct—whether it reflected conscious disregard of a known risk. It does not incorporate federal qualified-immunity doctrine and does not ask whether clearly established constitutional law required the officer to override medical judgment.

### 3. The Doctrines Are Analytically Distinct

Federal deliberate-indifference doctrine and qualified immunity address different legal questions from Illinois willful-and-wanton liability.

In *Parsano*, this Court held that correctional officers were entitled to qualified immunity because established precedent permitted them to defer to medical professionals absent reason to know that treatment was inadequate. That analysis concerned whether clearly established federal constitutional law required officers to override medical judgment.

Illinois battery does not incorporate that constitutional inquiry. It asks whether the officer's own conduct was willful and wanton under state law. Qualified immunity protects officials from damages liability for reasonable mistakes regarding constitutional standards. Illinois willful-and-wanton liability turns on

whether the defendant acted with conscious disregard for safety. The elements differ.

By instructing the jury that officers may trust medical professionals and are not constitutionally obligated to override them, the court introduced a federal deference principle into a state-law tort analysis. The instruction directed jurors to evaluate whether West had reason to know medical care was inadequate—a qualified-immunity inquiry—rather than whether his own conduct reflected conscious disregard under Illinois law.

4. The Risk of Juror Confusion Was Substantial

The instructional error altered the analytical framework the jury was asked to apply.

After Rule 50, the jury's task was to determine whether West's intentional use of force—placing his foot on Carter's hand and applying body weight—constituted willful and wanton conduct under Illinois law. Instead, the jury was instructed to consider whether officers could rely on medical personnel absent reason to know treatment was inadequate. (App. II at 124–125 (Tr. Vol. 6 at 968–969).)

That language aligned directly with the defense theory that West relied on Nurse Bates's assessment that Carter was "faking." The instruction thus framed reliance on medical staff as legally relevant to liability.

Illinois battery doctrine does not condition liability on whether an officer could defer to medical judgment. It asks whether the officer's own conduct

demonstrated conscious disregard of a known risk. By incorporating qualified-immunity language into the charge, the court inserted a federal constitutional limitation not found in Illinois law and shifted the jury's focus away from the elements governing the claim before it.

Where an instruction incorporates an inapplicable doctrinal framework—particularly one aligned with the defense's theory—the risk that the jury applied the wrong standard is substantial. There is at least a reasonable likelihood that the jury evaluated West's conduct through the lens of federal deference doctrine rather than Illinois willful-and-wanton liability. *Hoffman*, 593 F.3d at 912; *Boyde*, 494 U.S. at 380.

Because the battery claim was the only issue submitted to the jury, and because the instruction introduced a legal limitation foreign to Illinois law, the error cannot be deemed harmless.

### E. The District Court Erred by Permitting Undisclosed Financial and Health-Condition Testimony That Invited Jury Sympathy and Contravened Seventh Circuit Law

During Defendant West's brief direct examination, defense counsel elicited testimony that West had suffered a stroke and heart attack, required a wheelchair, lived on Social Security income, maintained a mortgage, and had no financial investments. (App. II at 117–119 (Tr. Vol. 6 at 918–920).)

At the time of trial, Macon County was obligated to indemnify Defendant West for acts within the scope of his employment. See 745 ILCS 10/9-102. As a result, evidence suggesting personal financial hardship was irrelevant and

29

misleading, because any judgment would be paid by the County—not West individually.

Plaintiff objected repeatedly on relevance grounds and specifically noted that West's financial condition had never been disclosed in discovery. (App. II at 117–119 (Tr. Vol. 6 at 918–920); Tr. Vol. 6 at 939). The objections were overruled.

That ruling was erroneous for three independent reasons.

First, financial condition evidence is relevant only to punitive damages—not liability. *Kemezy v. Peters*, 79 F.3d 33, 36–37 (7th Cir. 1996). Here, the testimony was presented before closing and before the jury reached any finding on willful and wanton conduct. Introducing poverty evidence at that stage invited sympathy and distorted the liability determination.

Second, under *Kemezy*, a defendant "should not be allowed to plead poverty if someone else will pay the award." *Id.* at 37. Where indemnification or insurance exists, evidence of personal financial hardship misleads the jury because punitive damages are designed to deter, not to impoverish. *Id.* at 36–37. The Macon County Sheriff's Department remained liable under respondeat superior. (Tr. Vol. 6 at 909.) And he was covered under their insurance policy.

The jury was never told whether West would personally satisfy any judgment. Presenting his financial hardship without clarifying indemnification risked precisely the distortion *Kemezy* cautions against.

Third, the testimony was never disclosed in discovery. Rule 26 requires disclosure of damages-related information. Fed. R. Civ. P. 26(a)(1)(A)(iii).

Undisclosed evidence that bears directly on damages—and that invites juror sympathy—should not be admitted over objection. See Fed. R. Civ. P. 37(c)(1).

The prejudice was substantial. The only remaining claim was battery. The central issue was whether West acted willfully and wantonly. The introduction of stroke, disability, Social Security income, and lack of assets reframed the case around West's vulnerability rather than his conduct. That evidence had minimal probative value and significant unfair prejudice. Fed. R. Evid. 403.

Because the verdict turned on credibility and intent, and because the improper testimony went directly to juror sympathies, the error was not harmless. The judgment should be reversed and the matter remanded for a new trial limited to the battery claim.

### F.    Cumulative Error

Even if no single error independently requires reversal, their cumulative effect deprived Plaintiff of a fair trial. The removal of the Monell claim mid-trial, exclusion of critical expert testimony, distortion of the governing instruction, and admission of improper financial-condition evidence collectively undermined the structural fairness of the proceedings. This Court has recognized that multiple prejudicial rulings, viewed together, may warrant reversal even if considered individually harmless.

### G.    Conclusion

The district court removed the *Monell* claim from the jury under Rule 50 and instructed the jury on the remaining Illinois battery claim using federal qualified-

immunity language not applicable to state law. Because those rulings altered the allocation of decision-making authority and the governing legal standards, reversal is required.

Accordingly, this Court should:

1.   Reverse the Rule 50 judgment on the *Monell* claim and remand for jury determination; and

2.   Vacate the battery verdict and remand for a new trial under properly framed Illinois instructions; and

3.   Any other relief this Court deems just.

Respectfully submitted,

<u>/s/ Rahsaan A. Gordon</u>
Counsel of Record for
Plaintiff-Appellant

Rahsaan A. Gordon
LAW OFFICES OF RAHSAAN A. GORDON
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 422-9500
Facsimile: (312) 422-9507

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record for Plaintiff-Appellant, Felita McGee, as Independent Administrator of the Estate of Michael Carter, Sr., furnishes the following in compliance with Federal Rule of Appellate Procedure 32(a)(7):

I hereby certify that this brief conforms to the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief was prepared using a proportionally spaced typeface in Century Schoolbook, 12-point font. According to the word count function of Microsoft Word, the brief contains 7259 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Dated: February 26, 2026

/s/ Rahsaan A. Gordon
Counsel of Record for
Plaintiff-Appellant

## PROOF OF SERVICE

I hereby certify that on this 26th day of February 2026, I electronically filed the foregoing Brief and Appendix I with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 26, 2026

/s/ Rahsaan A. Gordon
Counsel of Record for
Plaintiff-Appellant

No. 25-1855

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., deceased**

Plaintiff-Appellant

v.

**RANDELL WEST AND MACON COUNTY SHERIFF'S DEPARTMENT**

Defendants-Appellees

Appeal from the U.S. District Court
Central District of Illinois
Case No. 16-cv-02221
The Honorable Judge Colin Stirling Bruce

**APPENDIX I (Short Appendix)**

**TO**

**BRIEF OF PLAINTIFF-APPELLANT FELITA MCGEE,
as Independent Administrator of the
Estate of MICHAEL CARTER, SR, deceased**

LAW OFFICES OF RAHSAAN A. GORDON
Attorney for Plaintiff-Appellant

Rahsaan A. Gordon
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 422-9500
Facsimile: (312) 422-9507
rg@attorneygordon.com

## APPENDIX I (Short)

## TABLE OF CONTENTS

Appendix Certificate (Cir. R. 30(d)) ................................................................. 1

Relevant Docket Entries (docket report excerpts) ........................................... 2

Order on Rule 50 (R. 376) ............................................................................... 12

Final Judgment (R. 385) .................................................................................. 47

Notice of Appeal (R. 388) ................................................................................. 48

**\*Appendix II filed separately**

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d)**

The undersigned counsel hereby certifies that all of the materials included in Appendix I (bound to the Brief) and Appendix II (filed separately) include the materials required by Circuit Rule 30(a) and the additional materials required by Circuit Rule 30(b) necessary to evaluate the issues presented in the brief.

Specifically, Appendix I and Appendix II contain the judgment or order under review, and any opinion, memorandum of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the district court upon rendering that judgment or order; the notice of appeal; and the other orders, rulings, and record excerpts included in Appendix I and Appendix II that are necessary for the Court's review of the issues presented.

Dated: February 23, 2026

/s/ Rahsaan A. Gordon
Counsel of Record for
Plaintiff-Appellant

| | | |
|---|---|---|
| | | place call) before Magistrate Judge Eric I. Long. (Tape #UR-B 10:52 AM.) (SKR, ilcd) (Entered: 05/17/2017) |
| 05/17/2017 | 29 | ORDER denying 27 Motion for Reconsideration entered by Judge Colin Stirling Bruce on 5/17/17. Defendant West is allowed twenty-one (21) days to file his Answer to Plaintiff's Complaint. This case is referred to Magistrate Judge Eric I. Long for further proceedings. See written Order. (KM, ilcd) (Entered: 05/17/2017) |
| 05/17/2017 | | Set/Reset Deadlines pursuant to Order 29 : Randell West answer due 6/7/2017. (KM, ilcd) (Entered: 05/17/2017) |
| 06/07/2017 | 30 | ANSWER to 1 Complaint AND AFFIRMATIVE DEFENSES by Randell West. (Fruehling, Keith) (Entered: 06/07/2017) |
| 06/20/2017 | | Minute Entry for proceedings held 6/20/17 before Magistrate Judge Eric I. Long. Appearances on behalf of plaintiff by Rahsaan Gordon; for defendants by William Kurnik and Keith Fruehling. Status Conference held by telephone. Status of case discussed. Status Conference set for 8/9/2017 at 10:00 AM by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (Tape #UR-B 10:50 AM.) (SKR, ilcd) (Entered: 06/20/2017) |
| 06/28/2017 | 31 | AMENDED COMPLAINT against All Defendants, filed by Felita McGee.(Gordon, Rahsaan) (Entered: 06/28/2017) |
| 07/19/2017 | 32 | ANSWER to 31 Amended Complaint *and Affirmative Defenses* by Randell West. (Fruehling, Keith) (Entered: 07/19/2017) |
| 08/01/2017 | 33 | Summons Issued as to Jo Bates, Robert Braco, Decatur Memorial Hospital and sent to the attorney for service. (JMB, ilcd) (Entered: 08/01/2017) |
| 08/09/2017 | | Minute Entry for proceedings held 8/9/17 before Magistrate Judge Eric I. Long. No appearance on behalf of plaintiff. Appearance on behalf of defendant by William Kurnik and Keith Fruehling. Status Conference held by telephone. Status of case discussed. Further Status Conference set for 9/26/2017 at 11:00 AM by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (Tape #UR-B 10:07 AM.) (SKR, ilcd) (Entered: 08/09/2017) |
| 08/28/2017 | 34 | AFFIDAVIT of Service for Amended Complaint served on Keely Fiore, on behalf of Decatur Memorial Hospital on August 10, 2017, filed by Felita McGee. (Gordon, Rahsaan) (Entered: 08/28/2017) |
| 08/31/2017 | 35 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and failure to comply with FRCP 15* by Defendant Decatur Memorial Hospital. Responses due by 9/14/2017 (Lewis, Regan) (Entered: 08/31/2017) |
| 08/31/2017 | 36 | MEMORANDUM *of Law in Support of Decatur Memorial Hospital's Motion to Dismiss Plaintiff's Amended Complaint at Law* re 35 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and failure to comply with FRCP 15* by Decatur Memorial Hospital. (Attachments: # 1 Exhibit A - Illinois Secretary of State Printout)(Lewis, Regan) (Entered: 08/31/2017) |
| 08/31/2017 | 37 | ANSWER to 31 Amended Complaint *Affirmative Defenses and Demand for Jury* by Decatur Memorial Hospital.(Lewis, Regan) (Entered: 08/31/2017) |
| 09/14/2017 | 38 | MOTION for Extension of Time to File Response/Reply as to 35 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and failure to comply with FRCP 15*, 36 Memorandum, by Plaintiff Felita McGee. Responses due by 9/28/2017 (Gordon, Rahsaan) (Entered: 09/14/2017) |

| 07/07/2020 | 246 | MOTION in Limine by Defendants Robert Braco, Decatur Memorial Hospital. Responses due by 7/21/2020 (Attachments: # 1 Exhibit Ex A Braco Corporate Health Physician Employment Agreement)(Lewis, Regan) (Entered: 07/07/2020) |
|---|---|---|
| 07/07/2020 | 247 | MOTION in Limine by Plaintiff Felita McGee. Responses due by 7/21/2020 (Attachments: # 1 Exhibit A - Daniels Expert report, # 2 Exhibit C - Muse deposition, # 3 Exhibit D - Muse expert report, # 4 Exhibit E - DMH Response to Pltf 6th Supplemental Req, # 5 Exhibit F - Acciavatti II deposition)(Gordon, Rahsaan) (Entered: 07/07/2020) |
| 07/07/2020 | 248 | Exhibit re 247 MOTION in Limine *Exhibit B to Plaintiff's Motions in Limine* by Felita McGee. (Attachments: # 1 Exhibit B(1) - Daniels Deposition (1st half), # 2 Exhibit B(2) - Daniesl Deposition (2nd half))(Gordon, Rahsaan) (Entered: 07/07/2020) |
| 07/07/2020 | 249 | *STRICKEN* MOTION in Limine by Defendant Randell West. Responses due by 7/21/2020 (Fruehling, Keith) Modified on 7/21/2020 to show motion is stricken pursuant to text order entered 7/21/20 (SKR, ilcd). (Entered: 07/07/2020) |
| 07/15/2020 | 250 | MOTION in Limine *and Memorandum of Law in Support Thereof* by Defendant Randell West. Responses due by 7/29/2020 (Fruehling, Keith) (Entered: 07/15/2020) |
| 07/15/2020 | 251 | MOTION to Strike 249 MOTION in Limine by Defendant Randell West. Responses due by 7/29/2020 (Fruehling, Keith) (Entered: 07/15/2020) |
| 07/17/2020 | | TEXT ORDER Entered by Judge Colin Stirling Bruce on 7/17/20. The final pretrial conference scheduled for 7/27/2020 at 11:00 AM will be held by phone. Call in information will be provided to the parties at a later date.(SKR, ilcd) (Entered: 07/17/2020) |
| 07/20/2020 | 252 | ORDER entered by Judge Colin Stirling Bruce on 7/20/2020. Defendant Bates's Motion for Summary Judgment 172 is DENIED. Defendants Collins, Page, Parsano and Patton's Motion for Summary Judgment 175 is DENIED. Defendant Macon County Sheriff's Department's Motion for Summary Judgment 176 is GRANTED in part and DENIED in part. Defendant West's Motion for Summary Judgment 177 is DENIED. Plaintiff's Partial Motion for Summary Judgment 178 is DENIED. Defendant Decatur Memorial Hospital's Motion for Partial Summary Judgment 179 is DENIED. This matter remains set for final pretrial conference on 7/29/2020 at 11:00 a.m. with jury trial to begin on 9/8/2020 at 9:00 a.m. See written order. (JMB, ilcd) Modified on 1/6/2023 to correct trial date. (SKR). (Entered: 07/20/2020) |
| 07/20/2020 | | TEXT ORDER entered by Judge Colin S. Bruce on 7/20/2020. The parties are directed to file the proposed final pretrial order, in conformity with Local Rule 16.1(F), by 7/26/2020. (Pretrial Order due by 7/26/2020.)(DS, ilcd) Modified on 7/20/2020 to correct Judge (DS, ilcd). (Entered: 07/20/2020) |
| 07/20/2020 | 253 | MOTION for Extension of Time to File Response/Reply as to 249 MOTION in Limine , Order on Motion for Extension of Time to File Response/Reply,,,,, Order on Motion for Miscellaneous Relief,,,,, Order on Motion to Vacate,,,,, Status Conference,,,, 244 MOTION in Limine , 246 MOTION in Limine , 250 MOTION in Limine *and Memorandum of Law in Support Thereof*, 245 MOTION in Limine by Plaintiff Felita McGee. Responses due by 8/3/2020 (Gordon, Rahsaan) (Entered: 07/20/2020) |

| | | |
|---|---|---|
| | | GRANTED. The final pretrial conference on 8/11/23 and the jury trial on 9/5/23 are VACATED. If necessary, after ruling on the pending motions for reconsideration and related briefs, the court will set this matter for a status hearing for the purpose of resetting the final pretrial and trial dates. (SKR) (Entered: 08/09/2023) |
| 10/05/2023 | 300 | MOTION to Withdraw as Attorney *Michael B. Baggett* by Defendant County of Macon Illinois. Responses due by 10/19/2023 (Baggett, Michael) (Entered: 10/05/2023) |
| 10/06/2023 | | TEXT ORDER granting 300 Motion to Withdraw as Attorney. Attorney Michael B Baggett terminated as counsel of record in this case. Entered by Magistrate Judge Jonathan E. Hawley on 10/6/23. (WG) (Entered: 10/06/2023) |
| 03/20/2024 | 301 | ORDER entered by Judge Colin Stirling Bruce on 3/20/2024. IT IS THEREFORE ORDERED THAT:<br><br>(1) Defendant Macon County Sheriff's Department's Motion to Reconsider theDenial of its Motion for Summary Judgment 285 is DENIED.<br><br>(2) Defendant West's Motion to Reconsider the Court's Denial of SummaryJudgment 287 is DENIED.<br><br>(3) Defendants' Motions for Leave to Reply 295 296 are GRANTED.<br><br>(4) This case is set for a status hearing on Monday, April 1, 2024, at 10:00 a.m., by video, before Judge Colin Stirling Bruce. See full written Order. (Attachments: # 1 Video Conference Instructions)(VH) (Entered: 03/20/2024) |
| 03/21/2024 | | TEXT ORDER entered by Judge Colin Stirling Bruce on 3/21/2024. Pursuant to the court's Order 301 entered 3/20/24 granting Defendants' Motions for Leave to Reply 295 , 296 , the Clerk is directed to file proposed reply (#295-1) as Defendant West's Reply in Support of his Motion to Reconsider 287 and proposed reply (#296-1) as Defendant Macon County Sheriff's Department's Reply in Support of its Motion to Reconsider 285 . (VH) (Entered: 03/21/2024) |
| 03/21/2024 | 302 | DEFENDANT RANDELL WEST'S REPLY IN SUPPORT OF HIS Motion re 287 MOTION for Reconsideration filed by Defendant Randell West. (VH) (Entered: 03/21/2024) |
| 03/21/2024 | 303 | DEFENDANT MACON COUNTY SHERIFF'S REPLY IN SUPPORT OF ITS 285 MOTION for Reconsideration filed by Defendant Macon County Sheriff's Department. (VH) (Entered: 03/21/2024) |
| 03/22/2024 | 304 | NOTICE of Appearance of Attorney by Matthew Byron Knight on behalf of County of Macon Illinois, Macon County Sheriff's Department (Knight, Matthew) (Entered: 03/22/2024) |
| 03/22/2024 | 305 | NOTICE of Appearance of Attorney by Susan Jacqueline Eberhardt on behalf of County of Macon Illinois, Macon County Sheriff's Department (Eberhardt, Susan) (Entered: 03/22/2024) |
| 04/01/2024 | 306 | Minute Entry for proceedings held 4/1/2024 before Judge Colin Stirling Bruce. Appearance on behalf of the Plaintiff by Rahsaan Gordon. Appearance for the Defendants by Keith Fruehling and Matt Knight. All parties present by video. Status Conference held. Status of case discussed. A Final Pretrial Conference is set for 10/28/2024 at 11:15 AM by video before Judge Colin Stirling Bruce. Jury Selection/Jury Trial is set for 12/10/2024 at 9:00 AM in Courtroom A, in Urbana before Judge Colin Stirling Bruce (9 days). This is a FIRM TRIAL SETTING. Counsel is advised that any motions to continue will be DENIED. Any pretrial motions are to be filed by 5/31/2024 and any responses by |

| 06/17/2024 | 318 | MOTION to Withdraw as Attorney by Defendant Randell West. Responses due by 7/1/2024 (Fruehling, Keith) (Entered: 06/17/2024) |
|---|---|---|
| 06/18/2024 |  | TEXT ORDER granting 318 Motion to Withdraw as Attorney. Attorney Keith Eric Fruehling terminated as counsel of record for Defendant Randell West. Entered by Magistrate Judge Jonathan E. Hawley on 6/18/24. (WG) (Entered: 06/18/2024) |
| 06/20/2024 | 319 | ANSWER to 31 Amended Complaint and Amended Affirmative Defenses by Macon County Sheriff's Department.(TK) (Entered: 06/20/2024) |
| 06/28/2024 | 320 | RESPONSE to Motion re 314 MOTION to Relinquish Supplemental Jurisdiction , 315 MOTION for Extension of Time to File Response/Reply as to 314 MOTION to Relinquish Supplemental Jurisdiction filed by Plaintiff Felita McGee. (Gordon, Rahsaan) (Entered: 06/28/2024) |
| 07/02/2024 |  | TEXT ORDER entered by Judge Colin Stirling Bruce on 7/2/2024. Defendant Randell West filed a Motion to Withdraw as Counsel for attorney Bryan Vayr 316 . Attorney Vayr was terminated as counsel of record for Defendant West on May 31, 2024 by text order. Defendant's Motion is DENIED as moot. (VH) (Entered: 07/02/2024) |
| 07/23/2024 | 321 | ORDER entered by Judge Colin Stirling Bruce on 7/23/2024. IT IS THEREFORE ORDERED:<br><br>1) Defendant Randell Wests Motion to Relinquish Supplemental Jurisdiction( 314 ) is DENIED.<br><br>2) This case remains set for a final pretrial conference on October 28, 2024 at 11:15 AM and jury trial on December 10, 2024. See full written Order. (VH) (Entered: 07/23/2024) |
| 10/01/2024 | 322 | ORDER entered by Judge Colin Stirling Bruce on 10/1/2024. Final Pretrial Conference set on 10/28/2024 at 11:15 AM. Jury Trial set on 12/10/2024 at 9:00 AM. Motions due by 10/15/2024; Proposed Pretrial Order due by 10/25/2024; Responses due by 10/29/2024. See full written Order. (Attachments: # 1 Videoconference Instructions)(VH) (Entered: 10/01/2024) |
| 10/15/2024 | 323 | MOTION in Limine *and Memorandum of Law* by Defendant Randell West. Responses due by 10/29/2024 (Bradley, Ryan) (Entered: 10/15/2024) |
| 10/15/2024 | 324 | MOTION in Limine by Defendant Macon County Sheriff's Department. Responses due by 10/29/2024 (Knight, Matthew) (Entered: 10/15/2024) |
| 10/15/2024 | 325 | MOTION in Limine by Plaintiff Felita McGee. Responses due by 10/29/2024 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gordon, Rahsaan) (Entered: 10/15/2024) |
| 10/25/2024 | 326 | OBJECTION *to Plaintiff's Trial Exhibit List* by Randell West. (Bradley, Ryan) (Entered: 10/25/2024) |
| 10/25/2024 | 327 | Proposed Jury Instructions by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 10/25/2024) |
| 10/25/2024 | 328 | Proposed Voir Dire by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 10/25/2024) |
| 10/25/2024 | 329 | OBJECTION *TO PLAINTIFFS PROPOSED JURY INSTRUCTIONS* by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 10/25/2024) |
| 10/25/2024 | 330 | NOTICE - *SPECIAL INTERROGATORIES* (Knight, Matthew) (Entered: 10/25/2024) |
| 10/25/2024 | 331 | Proposed Jury Instructions by Randell West. (Bradley, Ryan) (Entered: 10/25/2024) |

| | | |
|---|---|---|
| | | held. Status of current trial date discussed. By agreement of the parties, the jury trial previously set for 12/10/2024 is vacated. A Further Status Conference is set for 1/27/2025 at 10:30 AM by video before Judge Colin Stirling Bruce. Jury Selection/Jury Trial is reset for 4/7/2025 at 9:00 AM in Courtroom A, in Urbana before Judge Colin Stirling Bruce (10 days). This is a FIRM trial setting. The Court notes that this trial will not be bumped again as it needs to be resolved. Video Conference Instructions are attached. (Court Reporter LC.) (DS) (Entered: 11/06/2024) |
| 11/17/2024 | | TEXT ORDER entered by Chief Judge Sara Darrow on 11/17/2024. Due to Judge Jonathan E. Hawley's confirmation as a District Judge, this case is no longer referred to Judge Jonathan E. Hawley. Any previously scheduled hearings are reset before the presiding judge. (Entered: 11/17/2024) |
| 11/22/2024 | 343 | RESPONSE to Motion re 325 MOTION in Limine filed by Defendant Randell West. (Bradley, Ryan) (Entered: 11/22/2024) |
| 11/22/2024 | 344 | RESPONSE to Motion re 339 MOTION in Limine *#48 Concerning Howard G. Buffet*, 324 MOTION in Limine filed by Plaintiff Felita McGee. (Attachments: # 1 Exhibit A) (Gordon, Rahsaan) (Entered: 11/22/2024) |
| 11/22/2024 | 345 | RESPONSE to Motion re 323 MOTION in Limine *and Memorandum of Law* filed by Plaintiff Felita McGee. (Gordon, Rahsaan) (Entered: 11/22/2024) |
| 01/27/2025 | | Minute Entry for proceedings held 1/27/2025 before Judge Colin Stirling Bruce. Appearance on behalf of the Plaintiff by Rahsaan Gordon. Appearance for the Defendants by Ryan Bradley and Matt Knight. All parties present by video. Final Pretrial Conference held. Jury trial matters and procedures discussed. Any objections to the witness list or exhibit list by either party are to be filed by 3/7/2025 and any responses to be filed by 3/21/2025. Jury Selection/Jury Trial remains set for 4/7/2025 at 9:00 AM in Courtroom A, in Urbana before Judge Colin Stirling Bruce (10 days). This is a FIRM trial setting. (Court Reporter LC.) (DS) (Entered: 01/27/2025) |
| 03/03/2025 | | TEXT ORDER entered by Judge Colin Stirling Bruce on 3/3/2025. Defendant Macon County Sheriff's Department is directed to submit to the court the contract for provisions of medical services between Macon County Sheriff's Department and Decatur Memorial Hospital. The contract was supposedly attached as Exhibit A to Macon County Sheriff's Offices response 340 to Plaintiff's motions in limine, but the filing contained no attached exhibits. Macon County Sheriff's Department is directed to submit the exhibit by March 5, 2025. (VH) (Entered: 03/03/2025) |
| 03/04/2025 | 346 | Exhibit re 340 Response to Motion by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 03/04/2025) |
| 03/07/2025 | 347 | OBJECTION *to Plaintiff's Witness and Exhibit Lists* by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 03/07/2025) |
| 03/07/2025 | 348 | OBJECTION *to Macon County Sheriff's Exhibit and Witness Lists* to 336 Objection, 337 Proposed Pretrial Order, by Felita McGee. (Gordon, Rahsaan) (Entered: 03/07/2025) |
| 03/07/2025 | 349 | OBJECTION *Plaintiff's Objection to West's Exhibit List* to 336 Objection, 337 Proposed Pretrial Order, by Felita McGee. (Gordon, Rahsaan) (Entered: 03/07/2025) |
| 03/24/2025 | 350 | ORDER entered by Judge Colin Stirling Bruce on 3/24/2025. See full written Order.(VH) (Entered: 03/24/2025) |
| 03/26/2025 | 351 | NOTICE of Appearance of Attorney by Crystal Rowe on behalf of County of Macon Illinois, Macon County Sheriff's Department (Rowe, Crystal) (Entered: 03/26/2025) |

| 03/31/2025 | 352 | ORDER Entered by Judge Colin Stirling Bruce on 3/31/25. IT IS THEREFORE ORDERED: 1) Plaintiff's Motion in Limine 325 is GRANTED in part and DENIED in part, as detailed herein. 2) Defendant Macon County Sheriff's Department's Motions in Limine ( 324 , 339 ) are GRANTED in part and DENIED in part, as detailed herein. 3) Defendant Randell West's Motion in Limine 323 is GRANTED in part and DENIED in part, as detailed herein. 4) This matter remains set for a jury trial commencing on April 7, 2025, at 9:00 am. SEE FULL WRITTEN ORDER. (ANW) (Entered: 03/31/2025) |
| --- | --- | --- |
| 03/31/2025 | 353 | TEXT ORDER entered by Judge Colin S. Bruce on 3/31/2025. On March 24, 2025, the court entered its Order 350 regarding the conduct of voir dire. To further assist the parties in preparing for trial, the court attaches a blank copy of the jury questionnaire form hereto. (ANW) (Entered: 03/31/2025) |
| 03/31/2025 | 354 | ORDER Entered by Judge Colin Stirling Bruce on 3/31/25. On March 31, 2025, the court entered its Order 352 issuing rulings on the parties' Motions in Limine ( 323 , 324 , 325 , 339 ). In light of that Order and the positions indirectly raised in their respective Motions concerning Plaintiff's Monell claim, both Plaintiff and the Macon County Sheriff's Department are hereby directed to each provide the court a pretrial brief regarding their respective positions on Plaintiff's Monell claim no later than Friday, April 4, 2025, at 3:00 p.m. (CT). SEE FULL WRITTEN ORDER. (ANW) (Entered: 03/31/2025) |
| 04/02/2025 | 355 | MOTION for Reconsideration re 352 Order on Motion in Limine,,,,,,,,,,,, by Plaintiff Felita McGee. Responses due by 4/16/2025 (Attachments: # 1 Exhibit A)(Gordon, Rahsaan) (Entered: 04/02/2025) |
| 04/02/2025 |  | TEXT ORDER entered by Judge Colin Stirling Bruce on 4/2/2025. Due to a conflict with the court's calendar, the jury trial set to commence on 4/7/2025 at 9:00 AM is RESET to 4/8/2025 at 9:00 AM in Urbana, before Judge Colin Stirling Bruce.(DS) (Entered: 04/02/2025) |
| 04/02/2025 |  | Set/Reset Hearings: Jury Trial set for 4/8/2025 at 9:00 AM in Courtroom A in Urbana before Judge Colin Stirling Bruce. (DS) (Entered: 04/02/2025) |
| 04/03/2025 |  | TEXT ORDER entered by Judge Colin S. Bruce on 4/3/2025. The court has received Plaintiff's Motion to Reconsider 355 . Macon County Sheriff's Department's response is due by Saturday, April 5, 2025, by 3:00 pm. (ANW) (Entered: 04/03/2025) |
| 04/03/2025 | 356 | MOTION in Limine *(49-52)* by Defendant Macon County Sheriff's Department. Responses due by 4/17/2025 (Attachments: # 1 Exhibit A-1, # 2 Exhibit A-2, # 3 Exhibit B, # 4 Exhibit C-1, # 5 Exhibit C-2, # 6 Exhibit D-1, # 7 Exhibit D-2, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G-1, # 11 Exhibit G-2)(Knight, Matthew) (Entered: 04/03/2025) |
| 04/04/2025 | 357 | RESPONSE to Motion re 355 MOTION for Reconsideration re 352 Order on Motion in Limine,,,,,,,,,,,, filed by Defendant Macon County Sheriff's Department. (Knight, Matthew) (Entered: 04/04/2025) |
| 04/04/2025 |  | TEXT ORDER entered by Judge Colin S. Bruce on 4/4/2025. The court has received Defendant Macon County Sheriff's Department's Additional Motions in Limine 356 . Plaintiff's and Defendant Randell West's responses are due by Monday, April 7, 2025, by noon. (ANW) (Entered: 04/04/2025) |
| 04/04/2025 | 358 | TRIAL BRIEF *Regarding Plaintiff's Monell Claim* by Macon County Sheriff's Department. (Knight, Matthew) (Entered: 04/04/2025) |
| 04/04/2025 | 359 | MOTION for Extension of Time to File *Trial Brief* by Plaintiff Felita McGee. Responses due by 4/18/2025 (Gordon, Rahsaan) (Entered: 04/04/2025) |

| 04/04/2025 | | TEXT ORDER entered by Judge Colin Stirling Bruce on 4/4/2025. Plaintiff's Motion to Extend Time to File Trial Brief 359 is GRANTED over Defendant Macon County Sheriff's Office's objection. Plaintiff's trial brief is due by Saturday, April 5, 2025, at 2:00 pm. (JJK) (Entered: 04/04/2025) |
| --- | --- | --- |
| 04/05/2025 | 360 | TRIAL BRIEF by Felita McGee. (Gordon, Rahsaan) (Entered: 04/05/2025) |
| 04/06/2025 | 361 | ORDER entered by Judge Colin Stirling Bruce on 4/6/2025. Plaintiff's Motion to Reconsider 355 is DENIED. This matter remains set for a jury trial commencing on Tuesday, April 8, 20205 at 9:00 AM. See written Order. (DS) (Entered: 04/06/2025) |
| 04/07/2025 | 362 | RESPONSE to Motion re 356 MOTION in Limine *(49-52)* filed by Plaintiff Felita McGee. (Gordon, Rahsaan) (Entered: 04/07/2025) |
| 04/07/2025 | 363 | ORDER entered by Judge Colin Stirling Bruce on 4/7/2025. Macon County's Additional Motions in Limine 356 is GRANTED in part and DENIED in part. This matter remains set for trial beginning on 4/8/2025 at 9:00AM. See written order. (JMB) (Main Document 363 replaced on 4/7/2025) (JMB). Modified on 4/7/2025 to show main document replaced for a formatting issue. (JMB). (Entered: 04/07/2025) |
| 04/08/2025 | 364 | NOTICE of Appearance of Attorney by Nicholas Gregory Limentato on behalf of Randell West (Limentato, Nicholas) (Entered: 04/08/2025) |
| 04/08/2025 | | Minute Entry for proceedings held 4/8/2025 before Judge Colin Stirling Bruce. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury Trial began. Preliminary matters discussed with the parties. Jurors in for voir dire and sworn as to qualifications. Voir dire held. Jurors selected and sworn to try the case. Preliminary instructions read to the jury. Stipulations of the parties read to the jury. Opening statements by the parties heard. Evidence presented on behalf of the Plaintiff. Witness sworn; testimony heard. Jury out until 4/9/2025 at 10:10 AM. Jury Trial continued to 4/9/2025 at 9:30 AM in Courtroom A in Urbana before Judge Colin Stirling Bruce. (Court Reporter LC.) (DS) (Entered: 04/09/2025) |
| 04/09/2025 | 365 | Plaintiff's Proposed Questions to Dr. Chad Zawitz. (DS) (Entered: 04/09/2025) |
| 04/09/2025 | | Minute Entry for proceedings held 4/9/2025 before Judge Colin S. Bruce. Jury Trial continued. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury trial continued. Evidence for the plaintiff continued. Witnesses sworn; testimony heard. Jury out until 9:10 AM. Jury Trial continued to 4/10/2025 at 9:15 AM in Courtroom A, Urbana before Judge Colin Stirling Bruce. (Court Reporter LC.) (DS) (Entered: 04/09/2025) |
| 04/10/2025 | | Minute Entry for proceedings held 4/10/2025 before Judge Colin S. Bruce. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury trial continued. Evidence for the plaintiff continued. Witnesses sworn; testimony heard. Jury out until 9:10 AM. Jury Trial continued to 4/10/2025 at 9:15 AM in Courtroom A, Urbana before Judge Colin Stirling Bruce. (Court Reporter LC.) (DS) (Entered: 04/11/2025) |
| 04/11/2025 | | Minute Entry for proceedings held 4/11/2025 before Judge Colin S. Bruce. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant |

| | | |
|---|---|---|
| | | Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury trial continued. Evidence for the plaintiff continued. Witnesses sworn; testimony heard. Jury out until 4/14/2025 at 9:10 AM. Jury Trial continued to 4/14/2025 at 9:15 AM in Courtroom A, Urbana before Judge Colin Stirling Bruce. (Court Reporter LC.) (DS) (Entered: 04/14/2025) |
| 04/14/2025 | 366 | DEPOSITION of Thomas Schneider taken on 4/11/2018 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Schneider deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 367 | DEPOSITION of Timothy Stone taken on 6/6/2019 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Stone deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 368 | DEPOSITION of Ronald Atkins taken on 3/25/2019 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Atkins deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 369 | DEPOSITION of William Hotwick taken on 12/11/2018 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Hotwick deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 370 | DEPOSITION of Edna Morgan taken on 3/26/2019 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Morgan deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 371 | DEPOSITION of Jo Bates taken on 5/29/2019 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Bates deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 372 | DEPOSITION of Thomas Schneider taken on 4/11/2018 by Plaintiff Felita McGee. (Attachments: # 1 Supplement Schneider deposition)(Gordon, Rahsaan) (Entered: 04/14/2025) |
| 04/14/2025 | 373 | MOTION for Judgment as a Matter of Law by Defendant Macon County Sheriff's Department. (Knight, Matthew) (Entered: 04/14/2025) |
| 04/14/2025 | 374 | MOTION for Directed Verdict *Rule 50* by Defendant Randell West. Responses due by 4/28/2025 (Bradley, Ryan) (Entered: 04/14/2025) |
| 04/14/2025 | | Minute Entry for proceedings held 4/11/2025 before Judge Colin S. Bruce. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury trial continued. Evidence for the plaintiff continued. Witnesses sworn; testimony heard. Jury out until 4/16/2025 at 1:20 PM. Jury Trial continued to 4/16/2025 at 1:15 PM in Courtroom A, Urbana before Judge Colin Stirling Bruce. (Court Reporter LC.) (DS) (Entered: 04/15/2025) |
| 04/15/2025 | 375 | RESPONSE to Motion re 374 MOTION for Directed Verdict *Rule 50*, 373 MOTION for Judgment as a Matter of Law filed by Plaintiff Felita McGee. (Gordon, Rahsaan) Modified on 4/22/2025 to show correct party filed by (DS). (Entered: 04/15/2025) |
| 04/15/2025 | | TEXT ORDER entered by Judge Colin S. Bruce on 4/15/2025. On April 14, 2025, after trial recessed for the day, Defendants each filed a motion for directed verdict 373 , 374 . These pleadings total approximately fifty-five pages of factual recitation and argument. On April 15, 2025, Plaintiff filed a combined response to the two motions of approximately forty pages 375 . Based upon their length, in order for the court to have sufficient time to appropriately and properly consider all of these pleadings, trial will |

009

| | | |
|---|---|---|
| | | recommence on Thursday, April 17, 2025, at 9:00 a.m. in Courtroom A in Urbana.(DS) (Entered: 04/15/2025) |
| 04/16/2025 | | TEXT ORDER entered by Judge Colin S. Bruce on 4/16/2025. In order to assist the parties, the court hereby advises that after the close of evidence, the jury instruction conference, and the preparation of the final instructions, it intends to proceed directly to closing arguments regardless of the court's decision on the pending motions for directed verdicts. In order to efficiently use the jury's time, no additional time will be granted for the preparation of closing arguments. Further, Plaintiff will have thirty minutes for initial closing argument, Defendants will have fifteen minutes each for closing arguments, and Plaintiff will have ten minutes for rebuttal argument.(DS) (Entered: 04/16/2025) |
| 04/16/2025 | 376 | ORDER entered by Judge Colin Stirling Bruce on 4/16/2025. Macon County Sheriff's Department's Fed. R. Civ. P. 50(a)(2) Motion for Judgment as a Matter of Law 373 is GRANTED in part and taken under advisement in part. Judgment as a matter of law is entered in favor of Macon County Sheriff's Department and against Plaintiff Felita McGee, as Independent Administrator of the Estate of Michael Carter, Sr., on Count II of Plaintiff's Amended Complaint. Randell West's Motion for Directed Verdict 374 is taken under advisement. The jury trial in this matter will recommence with regard to the battery claim on April 17, 2025. See written Order. (DS) (Entered: 04/16/2025) |
| 04/17/2025 | 377 | Proposed Jury Instructions as to Defendant West only. (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 378 | Marked Jury Instructions as to Defendant West Only. (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 379 | Final Jury Instructions as to Defendant West Only. (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 380 | Jury Question. (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 381 | Letter from Judge Bruce to Jury in Response to Question 380 . (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 382 | **+++ SEALED DOCUMENT - ORIGINAL DOCUMENT LETTER FROM JUDGE BRUCE TO JURY UNREDACTED** (DS) (Entered: 04/17/2025) |
| 04/17/2025 | | Minute Entry for proceedings held 4/17/2025 before Judge Colin S. Bruce. Appearance of the Plaintiff Felita McGee with counsel Rahsaan Gordon. Appearance of the Defendant Randell West with counsel Ryan Bradley. Appearance on behalf of Defendant Macon County Sheriff's Department by Thomas Schneider with counsel Matthew Knight and Susan Eberhardt. Jury trial continued as to Defendant West only. Oral motion by Defendant West for a mistrial. Arguments heard. The court will take this motion under advisement. Evidence for Defendant West presented. Witness sworn; testimony heard. Defendant rests. Jury out. Jury Instruction Conference held. Jury in. Jury Instructions read to the jury. Closing arguments heard. Jurors out to deliberate. Defendant West renews his oral motion for a mistrial; taken under advisement. Jury in with a verdict finding in favor of Defendant Randell West. Jurors polled and excused. Defendant West's Oral Motion for a Mistrial is denied as moot. Defendant Macon County Sheriff's Department's Motion for Judgment as a Matter of Law 373 and Defendant Randell West's Motion for Directed Verdict Under Rule 50 374 are both denied as moot at this time. Judgment to enter in favor of the Defendants and against Plaintiff. Court is in recess. (Court Reporter LC.) (DS) Modified on 4/21/2025 to correct date (DS). (Entered: 04/17/2025) |
| 04/17/2025 | 383 | JURY VERDICT. (DS) (Entered: 04/17/2025) |
| 04/17/2025 | 384 | **+++ SEALED DOCUMENT - ORIGINAL DOCUMENT JURY VERDICT UNREDACTED** (DS) (Entered: 04/17/2025) |
| 04/23/2025 | 385 | JUDGMENT entered. (DS) (Entered: 04/23/2025) |

| 05/01/2025 | 386 | PLAINTIFF'S EXHIBIT List from Jury Trial held 4/8/25-4/17/25 before Judge Bruce. Exhibits stored in manilla envelope in Clerk's Office Vault. (SKR) (Entered: 05/01/2025) |
| 05/01/2025 | 387 | DEFENDANT'S EXHIBIT List from Jury Trial held 4/8/25-4/17/25 before Judge Bruce. Exhibits stored in manilla envelope in Clerk's Office Vault. (SKR) (Entered: 05/01/2025) |
| 05/16/2025 | 388 | NOTICE OF APPEAL by Felita McGee. Filing fee $ 605, receipt number AILCDC-4742624. (Gordon, Rahsaan) (Entered: 05/16/2025) |
| 05/16/2025 | 389 | Short Record of Appeal Sent to US Court of Appeals re 388 Notice of Appeal (ANW) (Entered: 05/16/2025) |
| 05/19/2025 | 390 | NOTICE of Docketing Record on Appeal from USCA re 388 Notice of Appeal filed by Felita McGee. USCA Case Number 25-1855. (ANW) (Entered: 05/19/2025) |
| 05/30/2025 | 391 | TRANSCRIPT INFORMATION SHEET by Felita McGee (Gordon, Rahsaan) (Entered: 05/30/2025) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 02/22/2026 19:03:20 | | |
| **PACER Login:** | attorneygordon7 | **Client Code:** | Carter |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-cv-02221-CSB |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

E-FILED
Wednesday, 16 April, 2025  08:00:23 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| FELITA McGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., deceased, and as next-of-kin, ) ) ) ) ) | |
| Plaintiff, ) | Case No. 16-CV-2221 |
| ) | |
| v. ) | |
| ) | |
| MACON COUNTY SHERIFF'S DEPARTMENT and RANDELL WEST, ) ) ) | |
| Defendants. ) | |

**ORDER**

A jury trial in this matter commenced on April 8, 2025. Plaintiff Felita McGee, as Independent Administrator of the Estate of Michael Carter, Sr., rested her case in chief on April 14, 2025. Thereafter, both Defendants Macon County Sheriff's Department ("Macon County") and Randell West submitted written Motions[1] pursuant to Federal Rule of Civil Procedure 50(a) (#373, #374) on April 14, 2025. Plaintiff submitted her written Response (#375) on April 15, 2025. For the following reasons, Macon County's Motion (#373) is GRANTED in part and taken under advisement in part, and West's Motion (#374) is taken under advisement.

---

[1] Macon County's Motion adopts all the factual and legal bases raised in West's Motion and seeks that the court enter judgment on both Counts II and IX of the Amended Complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(a)(1), once a party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: resolve the issue against the party; and grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." A party may make a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Beverly v. Abbott Lab'ys*, 107 F.4th 737, 748 (7th Cir. 2024). The court does not determine credibility or weigh evidence in deciding a Rule 50(a) motion. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 922 F.3d 778, 784 (7th Cir. 2019).

## ANALYSIS

*Macon County's Motion (#373)*

Macon County moves for judgment as a matter of law on Count II. Macon County broadly argues that no reasonable jury could find by a preponderance of the evidence that any Macon County action was deliberately indifferent to the danger of constitutional violations of detainees, or that any Macon County action was the direct cause of Carter's death.

2

Plaintiff argues that she presented overwhelming evidence at trial that Macon County's failure to implement any healthcare policies, protocols, or procedures, specifically for diabetics, reliance on an LPN-only[2] staffing model with no oversight, and failure to supervise its jail medical system were all moving forces behind Carter's constitutional deprivation.

<u>Applicable Law</u>

A municipality may be held liable for its own violations of the federal Constitution and laws. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978)). "'Its own' is an important qualifier—a municipality is *not* vicariously liable for the torts of its employees or agents." *Bohanon*, 46 F.4th at 675 (emphasis in original) (citing *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020)).

For a *Monell* claim, a plaintiff must establish: (1) policy or custom, i.e., a municipal action; (2) municipal fault; and (3) "moving force" causation. *Bohanon*, 46 F.4th at 676. These requirements "'must be scrupulously applied' to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Id.* (quoting *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)). Indeed, "*Monell* liability is difficult to establish precisely because of the care the law has taken to avoid holding a municipality responsible for an employee's misconduct." *J.K.J.*, 960 F.3d at 377.

---

[2] "LPN" is an abbreviation for Licensed Practical Nurse.

Three types of municipal action support liability under 42 U.S.C. § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon*, 46 F.4th at 675 (citing *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). "Inaction can also give rise to liability if it reflects the municipality's 'conscious decision not to take action.'" *Bohanon*, 46 F.4th at 675 (citing *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017)).

The identified municipal action must also demonstrate municipal fault—that is "easily established when a municipality acts, or directs an employee to act, in a way that facially violates a federal right." *Bohanon*, 46 F.4th at 675 (citing *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404-05 (1997)). If the plaintiff does not allege a facially unconstitutional action, but rather that a municipality caused an employee to violate a federal right, a "rigorous standard[] of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Brown*, 520 U.S. at 405. "The plaintiff must demonstrate that the municipality itself acted with 'deliberate indifference' to [their] constitutional rights." *Bohanon*, 46 F.4th at 675 (quoting *Brown*, 520 U.S. at 407). That "is not an easy showing[,]" as it requires proof that it was obvious that the municipal action "would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Bohanon*, 46 F.4th at 675 (citing *LaPorta*, 988 F.3d at 987).

Finally, the plaintiff "must prove that the municipality's action was the 'moving force' behind the federal rights violation." *Bohanon*, 46 F.4th at 675 (citing *Brown*, 520 U.S. at 404). "This is a 'rigorous causation standard' that requires the plaintiff to 'show a "direct causal link" between the challenged municipal action and the violation of [their] constitutional rights.'" *Bohanon*, 46 F.4th at 675-76 (quoting *LaPorta*, 988 F.3d at 987).

With these standards in mind, the court turns to the case at bar.

Plaintiff's Claims Under Various *Monell* Theories

 Plaintiff's claims and theories of liability under *Monell*—i.e., the municipal action allegedly giving rise to liability—in this case were not a picture of clarity. Between Plaintiff's Amended Complaint, Motions in Limine, Trial Brief, and Response to the instant Motions, Plaintiff's claims and theories have constantly shifted, leaving the court to guess what Plaintiff sought to establish at any given time. As mentioned several times during trial, the court gave Plaintiff wide latitude to question the witnesses in order to establish any kind of claim and theory.[3] Macon County's Motion acknowledges the difficulty in pinning down Plaintiff's claims and theories, but in any event, states its intent to cover any potential theories in its Motion.

Plaintiff asserts the following claims in her Response: (1) failure to implement diabetic protocols (notice and inaction)[4]; (2) failure to coordinate care for diabetic pre-

---

[3] The court acknowledges that at times it probably gave Plaintiff's counsel more latitude than Plaintiff was entitled.

[4] The parentheticals in this sentence represent the court's attempted categorization of these claims under various *Monell* theories, based on Plaintiff's argument in her Response.

5

trial detainees (notice and inaction); (3) unsupervised LPN-only staffing model (*Pembaur*[5]); (4) failure to train medical and correctional staff to deal with diabetic detainees (failure to train); and (5) failure to conduct oversight of the healthcare contract and contractor (notice and inaction). Because Plaintiff's Response does not track Macon County's Motion, the court will attempt to match the parties' corresponding arguments with the identified claims.

**Notice and Inaction**

A county may not adopt a policy of inaction if it is "faced with actual or constructive knowledge that its agents will probably violate constitutional rights[.]" *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (citing *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)). "*Monell* liability based on inaction is steeper" than that of an affirmative action, because "a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous." *J.K.J.*, 960 F.3d at 378. "The Supreme Court has made plain that a failure to act amounts to municipal action for *Monell* purposes only if the County has notice that its program will cause constitutional violations." *Id.* at 379.

Notice is typically established by a "prior pattern of similar constitutional violations." *Id.* at 380. If there are no similar incidents, the plaintiff "must establish that [their] case is within the 'narrow range of circumstances' where notice can be inferred from the obviousness of the consequences of failing to act." *Bohanon*, 46 F.4th at 677

---

[5] *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

(citing *J.K.J.*, 960 F.3d at 380). Those types of cases are rare, and to succeed, the plaintiff "must show that the 'risk of constitutional violations' was 'so high that the municipality's failure to act can reflect a deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation.'" *Id.* (citing *J.K.J.*, 960 F.3d at 380).

    i.       *Failure to implement protocol for diabetes treatment*

Macon County argues that a claim based on a lack of written protocols for the treatment of diabetes is a remnant of a *Pembaur* claim and was previously viable but is now futile based on the court's Order (#352) on the motions in limine. Macon County argues that Plaintiff did not submit any evidence that the failure to have a diabetes treatment protocol was deliberately indifferent to obvious risks of constitutional deprivations or that the failure directly caused Carter's death.

It is difficult to untangle Plaintiff's argument. She attempts to shoehorn nearly every perceived failure that could relate to diabetes at the Macon County Jail ("Jail") into this claim—and the four other claims, as she adopts the arguments in this section in the rest of her Response.

Plaintiff states that the Sheriff testified that he was aware that there were no protocols, policies, or procedures for treating diabetic inmates, even though he knew that diabetes is a common, chronic, high-risk condition. The Sheriff testified that he never asked Decatur Memorial Hospital ("DMH") why no such policies were implemented, and acknowledged that there were no diabetic written protocols at the Jail from 2011 to 2015. The Sheriff testified that the reason he did not talk to anyone

7

about the lack of written diabetic protocols was "because there was no issues that came up that was made aware to [him] at any time that there any issues about diabetics not getting any type of treatment." Plaintiff also states that the Sheriff testified that from 2011 to at least July 18, 2015, DMH operated under the Sheriff's Policies and Procedures regarding medical services at the Jail.

Plaintiff then argues a smattering of incoherent and disconnected points:

-Plaintiff need not establish the Sheriff's prior notice of any "red flags" based on *Glisson*; the Sheriff had a legal duty to act when inaction will obviously lead to injury; Macon County lacked a system to coordinate medical care for chronic conditions like diabetes; Macon County abdicated its responsibilities because nurses were not trained to adequately care for diabetic inmates and Macon County did not ensure policies existed; a failure to screen for medical risks and placing unsupervised LPNs in charge without protocol evidences deliberate indifference; a lack of protocols, despite knowledge of a high-risk medical condition like diabetes, was equally as egregious as the facts in *J.K.J.*[6]; this case is the opposite of *Bohanon*, because there were "zero healthcare policies here, and every witness confirmed there was no training, oversight, or coordination[,]"; the absence of diabetic protocols meant there was no mandatory glucose monitoring, no routine medical review for diabetics, and no escalation triggers, "all of which directly contributed to Carter's death from diabetic ketoacidosis[,]"; the

---

[6] The Plaintiff states, in part, that the equally egregious facts in *J.K.J.*, were "where the Sheriff ignored multiple reports of sexual abuse and failed to take any remedial action."

8

Sheriff was on notice that DMH was not performing under the contract because Macon County's officers were not receiving training, specifically the officer charged with conducting medical screening at booking, which "was a moving force in Carter's injuries and death because Carter's Medical Maintenance Card was not completed properly and there is no evidence that his diabetic condition was timely communicated to a medical provider," and he was not indicated for a diabetic meal on his intake form; Macon County was also on notice that the contract was not being adhered to when the staffing model "consisted solely of, and entirely [on], LPNs day-to-day medical; staff who were working alone on shifts with no supervision[,]" and the failure to act in spite of an obvious risk is a deliberate indifference and the moving force behind Carter's injuries and death; the nurses were unequipped to deal with diabetics and their actions as "untrained, unqualified, and [un]supervised LPN[s] who did not have the benefit of diabetes protocols . . . were a moving force to Carter's health decline and [death][;]" the Jail's system of uncoordinated diabetic care failed Carter "in every way" and was the moving force behind his death; a "straight line can be draw from the lack of coordinated diabetic care" to other perceived failures in the Jail's healthcare system; and Carter's diabetic condition was not adequately addressed or communicated to Dr. Braco.

All these points, Plaintiff argues, clearly indicate the Sheriff's inaction to promulgate or cause to be promulgated diabetic protocols was the moving force behind Carter's decline and death. She further argues that the risks of Macon County's inaction to protect diabetic inmates is blatantly obvious and asserts this does not backslide into vicarious liability. She concludes that the Sheriff is at fault for "the choices he made

9

[which] resulted in the inadequate medical [care ] received by Carter via the jail's uncoordinated system to treat diabetics."

Plaintiff is essentially arguing that every single decision, action (or inaction), practice, or failure that touched Carter at the Jail coalesced into (or perhaps, was a result of) gross systemic failure, which was the moving force in Carter's inadequate medical treatment. Nevertheless, "*Monell* does not authorize 'a roving commission to root out and correct whatever municipal transgressions [the court] might discover—[the court's] role is to decide concrete cases.'" *Terry v. Cnty. of Milwaukee*, 2018 WL 2567721, at *11 (E.D. Wis. June 4, 2018) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010)). The relevant question is "whether a municipal decisionmaker caused the violation of the specific federal rights of the plaintiff[.] . . . Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources." *Carter*, 164 F.3d at 218-19.

At its core, Plaintiff's claim that Macon County is liable for the Sheriff's failure to implement a diabetes protocol is premised on a theory of inaction. Plaintiff argues some sort of notice, e.g., "the Sheriff was on notice that DMH was not performing under the contract because its own correctional officers were not receiving training . . . " But somewhat conflicting, Plaintiff also states that this case "is within the 'narrow range of circumstances' where notice can be inferred from the obviousness of the consequences of failing to act." *Bohanon*, 46 F.4th at 677 (citing *J.K.J.*, 960 F.3d at 380). The court will address both avenues.

Notice is typically established through a prior pattern of similar constitutional violations. Here, there was no evidence at trial of any prior similar constitutional violations, and in fact, as Plaintiff herself states, the Sheriff testified that he did not talk to anybody about a lack of diabetes protocols at the Jail *because there were no issues* that came up that he was made aware of, about diabetics not getting any type of treatment. There was no evidence that Lieutenant Hotwick was aware of any issues regarding a lack of diabetes protocol, let alone any constitutional violations. The evidence at trial was that diabetic inmates could be, and were, appropriately treated at the Jail for years prior to July of 2015, despite the lack of a written diabetes protocol.

So, Plaintiff was required to present some evidence to support a jury finding that the risk of constitutional violations was so high, that the Sheriff's failure to implement a diabetes protocol reflected a deliberate indifference to inmates' constitutional rights to adequate medical care. These cases are rare, and the bar is high. See *Bohanon*, 46 F.4th at 677.

This is not one of those rare cases, and Plaintiff has not cleared that high bar. Nothing about the failure to have a written protocol for diabetes evidences a risk of constitutional violations so high that the Sheriff's failure to act reflects a deliberate indifference to inmates' constitutional rights. As is typical, Macon County engaged in the division of labor between medical professionals and other security and administrative staff. See *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022). "[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the

prisoners in their care without fear of liability for doing so." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). The Sheriff appropriately deferred to the medical professionals—DMH, Braco, and Nurse Bates—to provide adequate healthcare, in this instance, to Carter. Further, the court agrees with Macon County that it was not deliberately indifferent for the Sheriff to not impose a treatment protocol that the medical professionals did not adopt in their own professional judgment.

Additionally, there was no evidence that the lack of a diabetes protocol was the "moving force" behind the constitutional violation. No evidence at trial suggested that Bates' or Braco's actions with respect to Carter's medical care had anything to do with a lack of a diabetes policy, nor was there any evidence indicating how Carter's treatment would have been different had a diabetes protocol been in place.

Plaintiff was required to submit some evidence that the lack of a protocol itself caused the constitutional deprivation—not simply the actions or inactions of the medical professionals in a world where there was not a protocol. It is not enough to show that Carter's constitutional rights were violated *as a result* of the lack of a diabetes protocol, although Plaintiff has not done that either. It must be the lack of a protocol itself that *directly caused* Carter's constitutional deprivation. See *Dean*, 18 F.4th at 239. There is no evidence establishing that causal link.

In sum, there is no evidence by which a reasonable jury could find that the Sheriff's failure to implement a diabetes policy reflected a deliberate indifference to inmates' constitutional right to adequate healthcare, or that the failure to do so was the moving force behind the violation of Carter's rights.

12

ii.        *Failure to coordinate care for diabetic pretrial detainees*

Macon County argues that a claim for a failure to coordinate an adequate healthcare system is too nebulous and ill-defined to survive *Monell*'s rigorous fault and causation standards. It argues that there was no notice of prior similar constitutional violations, there were no "red flags" or institutional alarms to put Schneider on notice that the healthcare system was inadequate, and to the contrary, the healthcare system was running smoothly and without incident under the Sheriff's tenure. Macon County argues that the jury would have to speculate what type of "coordination" would have been likely to prevent Carter's death.

Plaintiff argues that, as in *Glisson*, Carter's care was fragmented, disorganized, uncoordinated, there was no system to track his condition, no continuity of care among nurses, no mechanism to ensure physician oversight or emergency transport. Plaintiff argues that even though Carter showed obvious signs of deterioration, no coordinated action was taken. Plaintiff argues the failure to coordinate the care of diabetic patients and encouraging LPNs to practice outside their limited scope of practice were the moving force behind Carter's inadequate medical care.

One consistency in Plaintiff's case has been her heavy reliance on *Glisson*. In that case, Nicholas Glisson died 37 days after entering the custody of the Indiana Department of Corrections ("INDOC") from starvation, acute renal failure, and associated conditions. Glisson had serious, complicated health problems, including: laryngeal cancer, which led to surgeries removing his larynx and part of his pharynx, portions of his jaw bone, and 13 teeth; a permanent stoma normally accompanied by a

13

tracheostomy tube; a neck brace to support his head after radiation left his neck too weak to support his head, which impeded his breathing; cervical spine damage; a gastrojejunostomy tube for supplemental feeding into his abdomen; hypothyroidism; depression; and impairments from smoking and excessive alcohol use; and cognitive decline. However, Glisson was still able to live independently.

Glisson was charged and convicted for giving a friend a prescription painkiller. Before sentencing, his physician wrote a letter to the court expressing serious concern about Glisson's ability to survive if incarcerated, and another one of his physicians warned that Glisson would not do well if he was incarcerated.

Glisson eventually went to INDOC's Plainfield Correctional Facility where an intake exam was done by an LPN. He was seen by approximately 12 medical staff members, but his care was disjointed. No medical treatment plan was developed, and in his first 24 days in INDOC custody, no Corizon[7] provider reviewed his medical history, and nobody followed up for weeks. Once Glisson was seen by a physician, he was malnourished to the point of physical wasting and loss of weight and muscle mass. Over time, Glisson's physical and mental condition significantly deteriorated, but "the Corizon providers never took any steps to integrate the growing body of evidence of Glisson's malnutrition with his overall mental and physical health." *Glisson*, 849 F.3d at 377. Various urine and blood tests were not reviewed in a timely manner, or in at least

---

[7] Corizon was the corporate medical contractor and provider for the INDOC facilities involved in *Glisson*.

one instance, at all. After fasting labs showed acute renal failure, Glisson was sent to the hospital. Glisson was discharged from the hospital and died three days later.

The personal representative of Glisson's estate ("the Estate") sued several doctors and nurses, the INDOC, and Corizon. The district court granted summary judgment in favor of the defendants on all federal claims. The appeal was limited to Corizon.

The Estate argued that "Corizon had a deliberate policy not to require any kind of formal coordination of medical care either within an institution . . . or across institutions for prisoners who are transferred." *Id.* at 379. The Seventh Circuit emphasized this characterization, stating, "[r]ead fairly, [the Estate] is saying that Corizon consciously decided *not* to include this service, not that it had never thought about the issue and thus had nothing that could be called a policy." *Id.* (emphasis in original). The court then supported that characterization—the INDOC had "Chronic Disease Intervention Guidelines, which explain[ed] what policies its health-care providers [were] required to implement." *Id.* at 380. An additional INDOC Directive stated that "each facility must adopt instructions for proper management of chronic diseases" and articulated what those instructions should address, including "planned care in a continuous fashion" and that care was "organized and . . . consistent across facility lines." *Id.* Thus, the Seventh Circuit reasoned, in the face of a directive that was present seven years before Glisson was incarcerated, Corizon consciously chose not to

15

adopt the recommended policies. Corizon admitted it relied on none of the Health Care Service Directives in treating Glisson, but rather, general standards of medical care and nursing.

Ultimately, at the summary judgment stage, the Seventh Circuit found that a jury could conclude that "Corizon had actual knowledge, that without protocols for coordinated, comprehensive treatment, the constitutional rights of chronically ill inmates would sometimes be violated, and in the face of that knowledge" it adopted a policy of inaction. *Id.* at 382. Additionally, a jury could conclude that Corizon was indifferent to the serious risk posed to chronically ill inmates by failing to have coordinated, comprehensive treatment protocols such that it made a deliberate choice to do nothing, from among various alternatives. The Seventh Circuit emphasized that it did not hold that Corizon was required to adopt the Directives or a particular document, but it was required to "ensure that a well-recognized risk for a defined class of prisoners not be deliberately left to happenstance." *Id.* It stated, "Corizon had notice of the problems posed by a total lack of coordination. Yet despite that knowledge, it did nothing for more than seven years to address that risk." *Id.* The Seventh Circuit reversed the grant of summary judgment for Corizon.

Plaintiff makes various assertions about how *Glisson* supports her case.[8] But *Glisson* is distinguishable for various reasons. First, the Sheriff had no notice of any

---

[8] Some of Plaintiff's assertions are quite misleading. For example, Plaintiff states, "In *Glisson*, the Seventh Circuit held *Monell* liability appropriate where the DOC [sic] failed to adopt a coordinated care plan for inmates with chronic illness." That is a mischaracterization, at best. The Seventh Circuit determined, inter alia, that a

problems due to a failure to coordinate care for diabetic pretrial detainees. Second, whether the need to have formal coordination of medical care is obvious to a *healthcare provider* is a separate question from whether that need would be obvious to the Sheriff, who is not medically trained, and who hired a healthcare provider to deliver health care in the Jail. The *Glisson* court reasoned that a jury *could* conclude that the need was obvious to *Corizon*, but it was entirely silent to any potential liability of INDOC based on Corizon's actions. Corizon was a healthcare provider, and it operated under INDOC guidelines that expressly required healthcare providers to adopt instructions to manage chronic diseases, which "spell[ed] out what those instructions should address," including planned and continuous care that was organized and consistent between facilities. *Id.* at 380.

Here, Plaintiff has presented no evidence that the Sheriff (or Hotwick) knew that a failure to coordinate diabetic care for pretrial detainees would result in the deprivation of their constitutional rights, or that the need to have formal coordination was obvious. The only evidence in this case showed that there *was* a system in place between medical staff and correctional officers—if an inmate indicated a medical condition, it would be noted, and the medical staff would follow up on the medical condition. Holding the Sheriff liable here would amount to nothing more than respondeat superior liability.

---

reasonable jury could find that a *medical contractor's* failure to adopt protocols for coordinated treatment could constitute a policy of inaction, and the need to establish such protocols was so obvious that the failure to do so could constitute a deliberate indifference to a serious risk posed to chronically ill inmates—*by the medical contractor*.

17

Additionally, Plaintiff has put forth no evidence that the failure to coordinate diabetic care for pretrial detainees was the moving cause in the deprivation of Carter's constitutional rights. Plaintiff argues that uncoordinated diabetic care was the "moving force" behind Carter's death because "[a] straight line can be drawn from the lack of coordinated diabetic care to the fact that Carter was not given his prescribed medication, he did not have his blood glucose checked until his fifth day in custody, he was unlawfully diagnosed by LPNs on multiple occasions as being 'anxious' and/or faking; and his condition was never accurately communicated to a higher-level medical provider." This is one of many instances of Plaintiff's reliance on a but-for causal chain. *Monell* requires more.

   iii.    *Failure to conduct oversight of DMH or the healthcare services contract*

Macon County argues that any failure to provide oversight over DMH is also too nebulous and ill-defined to survive *Monell*'s rigorous fault and causation standards. It argues there was no notice of prior constitutional violations, and there were no "red flags" or institutional alarms to put the Sheriff on notice that oversight was necessary to avoid constitutional violations. Additionally, Macon County argues there was no evidence providing a direct link between any lack of oversight and Carter's death.

The arguments Plaintiff makes with regard to overseeing the healthcare contract and DMH are disconnected and illogical. Plaintiff states that Braco was the only doctor at the Jail and on call 24/7, despite working full time in Corporate Health. Plaintiff then seems to argue that Macon County's failure to oversee the contract to ensure that coverage by a truly available doctor is actionable and caused Carter harm. She argues

18

Macon County was on notice that DMH was not performing under the contract because correctional officers were not receiving training, specifically booking and intake officers; that failure was a moving force in Carter's death "because his Medical Maintenance Card was not completed properly and there is no evidence his diabetic condition was timely communicated to a medical provider[,]" and there was no indication for a diabetic meal on his intake form.[9] Plaintiff argues Macon County was on notice that the contract was "not being adhered to when the staffing model consisted entirely of day to day medical professionals who were solely LPNs who were working alone on shifts with no supervision." According to Plaintiff, the Sheriff's failure to act in spite of obvious risk is deliberate indifference and was the moving force behind Carter's death.

To refocus, the appropriate inquiry is whether the Sheriff had notice that failing to oversee the contract would cause constitutional violations, which is either shown through a pattern of similar constitutional violations, or if notice can be inferred from the obviousness of the consequences of failing to act. The risk must be so high that the failure to act reflects a deliberate indifference. Plaintiff must still show a direct causal link between the challenged action and the constitutional violation.

The evidence at trial established none of these things. Plaintiff attempts to argue that any number of perceived indiscretions by the Sheriff, correctional officers, or the

---

[9] The court notes that several deputies testified—tangentially—about diabetic meal trays in Carter's cell, including at least one uneaten diabetic meal tray.

medical staff, can all intermix in various combinations and result in *Monell* liability. Plaintiff appears to argue that a failure to oversee the contract or DMH created a trickle-down effect that resulted in a constitutional violation. That is insufficient for *Monell* liability.

**Custom or Practice/Policy Gaps**

The Seventh Circuit has "not adopted bright-line rules defining 'widespread custom or practice,' but there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (citing *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). The Seventh Circuit has "rejected claims of widespread custom or practice in cases involving a single incident, or three incidents." *Id.* (citing *Thomas*, 604 F.3d at 303-04). "To demonstrate that [a] County is liable for a harmful custom or practice, the plaintiff must show that County policymakers were 'deliberately indifferent as to [the] known or obvious consequences.'" *Thomas*, 604 F.3d at 303 (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)).

At trial, Plaintiff pursued two claims of a widespread custom or practice: (1) a custom of discouraging staff to call an ambulance, and (2) a custom of prioritizing finances over detainees' medical needs. However, there was no evidence at trial that such customs existed; no witness testified to either of those customs and there was no evidence of any instances involving those customs. The correctional officers testified about transferring Carter by squad car, but there was no evidence that any officer acted pursuant to a custom of discouraging staff to call an ambulance. Braco's trial testimony

20

031

concerning calling an ambulance for Carter was that Braco asked Bates if she thought Macon County would want to pay for an ambulance if Carter was faking his condition—but, Braco also testified that he never had any conversations with the Sheriff that involved the cost of calling an ambulance for emergency transport. (Arguably, the evidence established that ambulances would be called when necessary and finances were not a factor in detainees' medical needs.)

In sum, there was no evidence that there was a custom at issue here. It follows that without establishing a custom, there can be no deliberate indifference on the part of any Macon County policymaker to known or obvious consequences of that custom. There also can be no "moving force" causation without an established custom or practice.

### *Pembaur*

Under *Pembaur*, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986). Plaintiff appears to assert three distinct decisions under *Pembaur*: (1) the Sheriff's decision to contract with DMH; (2) the Sheriff's approval of Edna Morgan to act as lead nurse at the Jail; and (3) the Sheriff's decision to staff the Jail with only one physician.

*i.*        *Decision to Contract with DMH*

Macon County argues that there is no evidence from which a jury can conclude that something in DMH's background, including DMH's lack of experience delivering healthcare in a jail setting, made it plainly obvious that the consequences of contracting with DMH would be a deprivation of detainees' rights to adequate medical care. Macon County argues that the Sheriff hired one of the two major hospitals in the Decatur area, and there is no evidence of a deliberate disregard of blatant "red flags" in DMH's background. Macon County also argues that the Sheriff's decision to hire DMH is far too attenuated from the medical care that Carter received to demonstrate a direct causal link between the decision and Carter's medical care.

The Sheriff's decision to contract with DMH is effectively a hiring decision. Plaintiff must demonstrate that the decision to hire DMH reflects a deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. See *Brown*, 520 U.S. at 411. Only where adequate scrutiny of DMH's background would lead a reasonable policymaker to conclude the plainly obvious consequence of hiring DMH would be the deprivation of Carter's constitutional right to adequate healthcare can the failure to adequately scrutinize DMH's background constitute a "deliberate indifference." See *id.*

There was no evidence at trial that anything in DMH's background would lead a reasonable policymaker to make such a conclusion. Instead, the evidence at trial showed that the Sheriff hired one of the two major hospitals in the Decatur area, and the department responsible for delivering healthcare in the Jail—Corporate Health—had

22

serviced a number of large, institutional clients. Hiring DMH to provide healthcare in the Jail—with no evidence that DMH could not competently provide the medical services it offered—does not reflect a deliberate indifference to Carter's constitutional right to adequate healthcare. That DMH had not previously delivered healthcare in a jail is insufficient to establish that it would be plainly obvious to the Sheriff that hiring DMH would result in a deprivation of any detainees' constitutional right to adequate healthcare.[10]

Moreover, there was no evidence at trial that hiring DMH was the "moving force" behind Carter's inadequate medical care. "Every injury suffered at the hands of a municipal employee can be traced back to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Brown*, 520 U.S. at 410.

Here, there is nothing except a "but-for" causal argument. The Sheriff's decision to hire or contract with DMH is far too distant on the causal chain to show the required direct causal link between that decision and Carter's inadequate medical care. See *Bohanon*, 46 F.4th at 675-76 (quoting *LaPorta*, 988 F.3d at 987). The most direct causal

---

[10] As an aside, the court would note there was evidence that DMH also provided health care to the Illinois Department of Corrections women's facility located in Decatur, indirectly, through Wexford Health Services.

chain the court can conceive is this: But-for the Sheriff's decision to hire DMH, and but-for DMH allowing Debbie Acciavatti to staff the contract with the Jail, and but-for Acciavatti agreeing that Braco could work remotely and Morgan acting as lead nurse and hiring Bates, and but-for Morgan improperly training Bates, and but-for Bates' and Braco's independent medical decisions in treating Carter, then Carter's rights would not have been violated. This is too attenuated to show the Sheriff's action has a direct causal link with the constitutional injury.

> ii.      *Decision to Approve Morgan as Lead Nurse*

Macon County argues that Plaintiff failed to submit any evidence that could allow a reasonable jury to conclude by a preponderance that the Sheriff's decision to approve Morgan to act as the lead nurse at the Jail was deliberately indifferent to the risk of constitutional violations. Macon County argues the evidence showed that Morgan was acting under the supervision of Braco, a physician, who was on call and available to supervise and provide orders regarding inmate healthcare, and Macon County may expect that DMH's medical professionals will not exceed the bounds of their oath and ethical obligations. Thus, it was not a highly predictable consequence that allowing Morgan to act as lead nurse would lead to obvious constitutional violations. Additionally, Macon County argues there is no evidence that the decision directly caused Carter's death—any causal argument relies on the same "but-for" causation that is insufficient for *Monell*'s rigorous causation standard.

Allowing Morgan to act as lead nurse does not facially violate a federal right. Thus, Plaintiff had to present evidence that would allow a reasonable jury to find that the Sheriff made this decision with a deliberate indifference to inmates' constitutional rights to adequate healthcare. For Plaintiff to prevail, it must have been obvious to the Sheriff that this action would lead to constitutional violations, and the Sheriff must have consciously disregarded those consequences. There was no evidence at trial to support any such findings.

The evidence at trial showed that Morgan, while working as an LPN, was acting under Braco's supervision. The Sheriff testified that Morgan was filling the position at a time whenever a Registered Nurse was not in place, on a temporary basis, until there was a Registered Nurse in place. Braco was available by phone to supervise. There was no evidence of prior incidents where the decision to allow Morgan to act as lead nurse led to constitutional violations. No evidence supports the assertion that the Sheriff's decision to let Morgan act as lead nurse was made with a deliberate indifference to inmates' constitutional rights. One could even argue the opposite—Hotwick testified that there were times that there were problems hiring a Registered Nurse to fill the position. Was the alternative to let the position remain vacant until a Registered Nurse could be hired, trained, and begin working? Acciavatti testified that Morgan was interested in the position of nurse manager (lead nurse), and that Morgan had been at the Jail for a number of years, she had a good relationship with the correctional officers and the administration and the inmates, and she was on the path to obtaining her Registered Nurse degree. No evidence at trial supports a finding that the Sheriff's

036

decision here was done with deliberate indifference to inmates' constitutional rights, or that it was obvious that the decision would lead to constitutional violations and the Sheriff consciously disregarded those consequences.

Similarly, there was no evidence at trial that would allow a reasonable jury to find that this decision was the "moving force" behind the constitutional violation, or that there was a direct causal link between the decision and the violation of Carter's constitutional rights. See *Bohanon*, 46 F.4th at 675-76 (quoting *LaPorta*, 988 F.3d at 987). Plaintiff again relies on a but-for causal chain: But-for the Sheriff's decision to allow Morgan to act as lead nurse (as opposed to leaving the position vacant), and but-for her insufficient oversight of the nurses, including Bates, and but-for Bates' improperly treating Carter—even with the directions of a physician, Braco—based on that insufficient oversight, then Carter's rights would not have been violated. This is too attenuated to show the Sheriff's action has a direct causal link with the constitutional injury.

iii.    *Decision to Staff the Jail with One Physician/LPN-only Staffing Model*

Macon County argues that Plaintiff failed to submit any evidence that could allow a reasonable jury to conclude by a preponderance of the evidence that the Sheriff's decision to staff the Jail with just one physician, Braco, was deliberately indifferent to the risk of constitutional violations. Macon County argues that there was no evidence that constitutional violations were a highly predictable consequence of not staffing additional doctors, or that the decision was the direct cause of Carter's death. There was no evidence that Braco could not be reached at any point during Carter's

detention—rather, Braco saw Carter the day before his death, and was consulted by Bates for direction and orders on how to handle Carter's elevated glucose levels on the day he died.

Plaintiff argues that the Sheriff's express authorization to staff the Jail with LPNs working alone without supervision amounts to deliberate indifference and was the moving force behind Carter's lack of adequate care. She argues that it is illogical to suggest Braco was supervising LPNs 24/7, and that the evidence at trial showed that the Sheriff knowingly authorized and encouraged an LPN-only staffing model without supervision that would require them to work beyond their licensure, which is forbidden by Illinois law. She argues again here that the Sheriff did not evaluate DMH's qualifications in correctional care before or after hiring DMH, provided no oversight over DMH, and did nothing to ensure that the terms were being enforced, so his actions and failure to take action in light of blatantly obvious risks is actionable under *Monell*.

First, the decision to staff the Jail with one physician does not facially violate a federal right. Thus, Plaintiff had to present evidence that would allow a reasonable jury to find that the Sheriff made this decision with a deliberate indifference to inmates' constitutional rights to adequate healthcare. Plaintiff had to present evidence that it must have been obvious to the Sheriff that this action would lead to constitutional violations, and the Sheriff consciously disregarded those consequences. Again, there was no evidence at trial to support any such findings. The Sheriff utilized a staffing model that, by all accounts, had sufficiently delivered healthcare in the Jail for many years. There was no evidence of prior incidents where the decision to have one

27

physician lead to constitutional violations. And in this case, there was no evidence that Braco was not available for consult or that he could not be contacted. The evidence at trial showed that Braco saw Carter on one occasion when Braco was at the Jail, and was then contacted with regard to Carter on the day of Carter's death. No evidence at trial supports a finding that the Sheriff's decision here was done with deliberate indifference to inmates' constitutional rights, or that it was obvious that it would lead to constitutional violations and the Sheriff consciously disregarded those consequences.

There was also no evidence that would allow a reasonable jury to find that this decision was the "moving force" behind the constitutional violation, or that there was a direct causal link between the decision and the violation of Carter's constitutional rights. See *Bohanon*, 46 F.4th at 675-76 (quoting *LaPorta*, 988 F.3d at 987). Braco was available and responsive when contacted, so there is nothing to connect the decision to staff one physician to Carter's death.

Next, Plaintiff's claim regarding an unsupervised LPN-only staffing model misconstrues the evidence,[11] lacks any support from the evidence at trial, and fails for the same reasons as above. The evidence at trial established that LPNs were the primary medical staff at the Jail, but that Braco was always on call. Again, no evidence was presented that Braco was not available or able to be reached with respect to Carter's care, or at any time. Assuming arguendo that LPNs worked beyond their licensure, i.e.,

---

[11] The evidence showed the staffing was Braco, and a mix of RNs and LPNs.

violated Illinois law, a violation of Illinois law is not facially unconstitutional. Thus, there was no evidence at trial that the Sheriff was deliberately indifferent to inmates' constitutional rights.

### Failure to Train, Supervise, and Discipline Employees

Macon County argues that any claims for a failure to train, supervise, or discipline Macon County employees fail because Plaintiff failed to demonstrate any constitutional violation by the corrections officers. Macon County notes Plaintiff's concession at trial that she was not proceeding on any theory that a Macon County employee deprived Carter of his right to adequate healthcare, noting the Seventh Circuit's finding in this case that there was "no evidence, other than [Plaintiff's] own sheer speculation, that the officers knew or had reason to know that Nurse Bates was providing inadequate care." *McGee*, 55 F.4th at 569.

Macon County also argues that Plaintiff did not demonstrate that any failure to train Macon County correctional officers was deliberately indifferent to the rights of detainees to adequate medical care, because there was no evidence that the correctional officers' duties included delivering healthcare services. In other words, it argues, not training correctional officers on delivering healthcare when they were not expected to do so, and medical professionals *were* expected to do so, does not evince deliberate indifference to detainees' constitutional rights. Finally, Macon County argues that there was no particular omission in officer training that was necessary to avoid deliberate indifference to detainees' constitutional rights, and no evidence that any particular omission in training directly caused Carter's death.

Plaintiff argues that correctional officers were charged with conducting intake medical screenings of inmates being booked into the Jail, and that the officers received no training on what to do if they encountered someone with a chronic condition such as diabetes and when or how to report that information to a medical provider. Plaintiff also argues that there was no training of the LPNs staffed at the Jail to adequately deal with detainees with diabetes.

First, any claim regarding the lack of training of the LPNs at the Jail is foreclosed. The court found in a prior Order (#352) that the contract in this case did not, as a matter of law, delegate policymaking authority to DMH or Braco. Thus, DMH's policies, or lack thereof, or failure to train or supervise its nurses, are not those of Macon County through a delegation theory of liability under *Monell*. To assert that the Sheriff should have trained LPNs to "deal with" detainees with diabetes is senseless. To the extent that the Plaintiff proposes that the Sheriff was constitutionally obligated to provide medical training—in addition to the training required in order to obtain a Licensed Practical Nurse license—to the nurses at the Jail for treating detainees with diabetes, the court finds no support for this assertion.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A failure to train employees "in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)). To demonstrate deliberate indifference for the purpose of a failure to train claim, it is ordinarily

30

necessary to establish a pattern of similar constitutional violations by untrained employees. *Connick*, 563 U.S. at 62 (citing *Brown*, 520 U.S. at 409). "'[I]n a narrow range of circumstances,' deliberate indifference could be found when the violation of rights is a 'highly predictable consequence' of a failure to provide officers what they need to confront 'recurring' situations." *J.K.J.*, 960 F.3d at 380 (quoting *Brown*, 520 U.S. at 409). While not foreclosed, it is "rare[] that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *J.K.J.*, 960 F.3d at 380 (citing *Connick*, 563 U.S. at 64).

Any failure to train claim immediately fails, as there was no evidence at trial that any correctional officer violated Carter's constitutional right to adequate medical care. See *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("[T]here can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights."). The evidence established that all the correctional officers deferred to the Jail medical professionals to provide Carter with appropriate medical care. The officers were not "constitutionally obligated to override the judgment of [the] medical professionals" unless the officers knew or had reason to know that Carter was receiving inadequate medical treatment. See *McGee*, 55 F.4th at 573. No evidence at trial established that the officers knew or had reason to know that Carter received inadequate medical treatment.

042

Plaintiff further argues that officers received no training on what to do if they encountered someone with a chronic condition or when or how to report that information to a medical provider. That assertion is a bit specious. It is true that Michael Patton testified that he was not trained to recognize or observe if someone being booked had a medical condition that would warrant reaching out to the medical staff, or to ascertain which medical conditions warrant reaching out to the medical staff. However, he also testified that during the intake process, officers ask individuals if they have any medical problems, and that the officers have to rely on the individual to relay any medical information to the officers. He testified that if an individual reported a chronic condition, such as high blood pressure or diabetes, that would be notated so that the medical staff would automatically get notice of it. He further testified that the medical staff would always follow up, because something like high blood pressure or diabetes would always be medicated, and it was the medical team's job to follow up. Morgan testified that high blood pressure and diabetes were conditions that were self-reported at booking, correctional officers would complete Medical Maintenance Cards and put them into a nurse's box, and nurses would check the box several times a day. Plaintiff's exhibit 122, Carter's Medical Maintenance Card, indicated that Carter had diabetes.

It is difficult to conceive what additional training that the Sheriff should have given to correctional officers to ensure Carter received adequate medical care. There was no evidence that there was any failure with respect to Carter at intake—Carter's Medical Maintenance Card indicated that he had diabetes, and the medical staff knew about it.

In sum, Plaintiff presented no evidence by which a reasonable jury could find the Sheriff's failure to train correctional officers amounted to deliberate indifference to inmates' rights to adequate medical care, i.e., that the violation of rights was a highly predictable consequence of a failure to provide training to confront recurring situations. See *J.K.J.*, 960 F.3d at 380 (quoting *Brown*, 520 U.S. at 409). Causation also fails here, for the same reasons.

Any failure to supervise and failure to discipline claims with respect to correctional officers appear to be abandoned.[12] As discussed, there was no evidence that any correctional officer violated Carter's constitutional rights; because that is also required for a failure to supervise claim, the claim fails. See *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). There was no evidence regarding a failure to discipline correctional officers, so any potential claim here fails.

In essence, while repeatedly using the term *"Monell,"* Plaintiff is at best asserting a variety of nebulous, attenuated negligence or respondeat superior claims. Plaintiff has presented no evidence of the Sheriff's (or Hotwick's) deliberate indifference to inmates' constitutional rights to adequate healthcare, or that any action, inaction, policy, custom, procedure, or lack thereof by the Sheriff, Hotwick, or Macon County, was the moving force behind the deprivation of Carter's constitutional rights.

---

[12] Plaintiff's claim with respect to unsupervised LPNs is addressed earlier in this Order.

33

Accordingly, judgment as a matter of law is entered in favor of Macon County Sheriff's Department and against Plaintiff Felita McGee, as Independent Administrator of the Estate of Michael Carter, Sr., on Count II of Plaintiff's Amended Complaint.

*West's Motion (#374)*

West moves for judgment as a matter of law on Count IX.[13] West argues that his conduct was authorized under Illinois law, not intended to harm or offend Carter, and there is no evidence that West's contact with Carter caused physical injury or offense.

Plaintiff argues that West testified at trial that he intended to cause pain to Carter, the video in evidence at trial shows West intentionally making contact with Carter, and that Macon County is liable for West's willful conduct.

The court takes this Motion under advisement.

IT IS THEREFORE ORDERED:

1) Macon County Sheriff's Department's Fed. R. Civ. P. 50(a)(2) Motion for Judgment as a Matter of Law (#373) is GRANTED in part and taken under advisement in part.

2) Judgment as a matter of law is entered in favor of Macon County Sheriff's Department and against Plaintiff Felita McGee, as Independent Administrator of the Estate of Michael Carter, Sr., on Count II of Plaintiff's Amended Complaint.

3) Randell West's Motion for Directed Verdict (#374) is taken under advisement.

---

[13] Again, Macon County also moved for judgment as a matter of law on the Count IX, adopting West's Motion in full.

4)  The jury trial in this matter will recommence with regard to the battery claim

on April 17, 2025.

ENTERED on this 16th day of April 2025.

s/ *Colin S. Bruce*
COLIN S. BRUCE
U.S. DISTRICT JUDGE

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

**Felita McGee,** *as Independent Administrator of the Estate of Michael Carter, Sr.,*

      **Plaintiff,**

      vs.

**Macon County Sheriff's Department, Randell West, County of Macon, Illinois,**

      **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**Case Number: 16-2221**

## JUDGMENT IN A CIVIL CASE

☒ **JURY VERDICT**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**.  This action came before the Court, and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that plaintiff, Felita McGee, *as Independent Administrator of the Estate of Michael Carter, Sr.,* recovers nothing on her claims against defendants Macon County Sheriff's Department and Randell West.

**IT IS FURTHER ORDERED AND ADJUDGED** that plaintiff, Felita McGee, *as Independent Administrator of the Estate of Michael Carter, Sr.,* recovers nothing from defendant County of Macon Illinois. County of Macon Illinois was added as a defendant on July 12, 2018, because any judgment entered against the Macon County Sheriff's Department would have been funded by County of Macon Illinois.

**Dated: 4/23/2025**

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., *deceased* and as next-of-kin )<br><br>Plaintiff )<br><br>vs. )<br><br>MACON COUNTY SHERIFF'S DEPARTMENT; DECATUR MEMORIAL HOSPITAL; DMH CORPORATE HEALTH SERVICES; ROBERT BRACO, MD; JO BATES, LPN; RANDELL WEST; LARRY PARSANO; TERRY COLLINS; MICHAEL PATTON; and JOSHUA PAGE )<br><br>Defendants. ) | Case No. 16-cv-02221 |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Plaintiff, FELITA MCGEE, as

Independent Administrator of the ESTATE OF MICHAEL CARTER, SR., *deceased*,

hereby appeals to the United States Court of Appeals for the Seventh Circuit from

the judgment as matter of law entered on April 16, 2025 in favor of Macon County

Sheriff's Department, the jury verdict reached on April 17, 2025 in favor of Randell

West (Dkt. 383) and the judgment entered on April 23, 2025 in favor of Macon

County Sheriff's Department and Randell West (Dkt 385).

Respectfully submitted,

/s/ Rahsaan A. Gordon
  Attorney for Plaintiff

Rahsaan A. Gordon
**LAW OFFICES OF RAHSAAN A. GORDON**
333 West Wacker Drive, Suite 500

Chicago, Illinois 60606
(312) 422-9500
rg@attorneygordon.com

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Notice of Appeal was filed on the 16th day of May 2025 through the ECF system with the United States District Court for the Central District of Illinois for delivery to registered participants for the litigation in which said document has been filed.

/s/ Rahsaan A. Gordon
Attorney for Plaintiff

Rahsaan A. Gordon
**LAW OFFICES OF RAHSAAN A. GORDON**
333 West Wacker Drive, Suite 500
Chicago, Illinois 60606
(312) 422-9500
rg@attorneygordon.com

2