No. 25-1855

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH DISTRICT

**FELITA MCGEE, as Independent Administrator of the Estate of MICHAEL CARTER, SR., deceased**

Plaintiff-Appellant

**v.**

**RANDELL WEST AND MACON COUNTY SHERIFF'S DEPARTMENT**

Defendants-Appellees

Appeal from the U.S. District Court
Central District of Illinois
Case No. 16-cv-02221
The Honorable Judge Colin Stirling Bruce

**REPLY BRIEF OF PLAINTIFF-APPELLANT FELITA MCGEE,
as Independent Administrator of the
Estate of MICHAEL CARTER, SR, deceased**

LAW OFFICES OF RAHSAAN A. GORDON
Attorney for Plaintiff-Appellant

Rahsaan A. Gordon
77 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: (312) 422-9500
Facsimile: (312) 422-9507
rg@attorneygordon.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES.......................................................................iii

INTRODUCTION....................................................................................1

ARGUMENT...........................................................................................2

I.     Appellees' waiver of arguments do not defeat Plaintiff's

preserved structural *Monell* theory.........................................................2

II.    A reasonable jury could find deliberate indifference and

moving-force causation..........................................................................4

     A.     Plaintiff's theory is not respondeat superior.................................5

     B.     The record permitted an obvious-risk finding.............................7

     C.     The record permitted a moving-force causation finding.............10

III.   The categorical exclusion of Pearson and Zawitz was an abuse

of discretion and infected the Rule 50 ruling........................................12

     A.     The district court excluded far more than legal conclusions......12

     B.     The excluded testimony was central to the elements the

district court found missing.........................................................13

     C.     The error was not harmless.........................................................14

IV.   The battery instruction imported federal qualified-immunity

doctrine into an Illinois battery claim...................................................15

V.    West's health and financial-condition testimony improperly

invited sympathy before liability was decided.......................................17

VI.     The cumulative effect of these errors reinforces the need for

reversal..................................................................................................19

CONCLUSION...............................................................................................20

CERTIFICATE OF COMPLIANCE ...........................................................21

CERTIFICATE OF SERVICE ....................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Artis v. Santos*, No. 22-2619, 2024 WL 1020991 (7th Cir. Mar. 8, 2024)....................19

*Barnes v. City of Centralia, Illinois*, 943 F.3d 826 (7th Cir. 2019)...............................7

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) .........................10

*Bohanon v. City of Indianapolis*, 46 F.4th 669 (7th Cir. 2022)....................................8

*Boyde v. California*, 494 U.S. 370 (1990) ....................................................................19

*City of Canton v. Harris*, 489 U.S. 378 (1989).............................................................10

*Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016) ............................................. 9, 11

*Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214 (7th Cir. 2021)..........................12

*Glisson v. Indiana Department of Correction,* 849 F.3d 372 (7th Cir. 2017)

(en banc).................................................................................................8, 10-12, 14

*J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020) (en banc)....................................10

*Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009 (7th Cir. 2018)...............................19

*Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996) ..............................................................20

*King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012) ...................................................... 9, 11

*McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022) .........................................................18

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)............................*passim*

*Puffer v. Allstate Insurance Co.*, 675 F.3d 709 (7th Cir. 2012) .....................................7

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ...........................8

*Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010) ...... 12-13

*Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004) ................................................................................................... 9, 11-12

**Statutes, Regulations, and Rules**

42 U.S.C. § 1983 ...............................................................................................9

745 ILCS 10/1-210 ..........................................................................................18

745 ILCS 10/2-102 ..........................................................................................21

745 ILCS 10/2-202 ..........................................................................................18

745 ILCS 10/2-302 ..........................................................................................21

745 ILCS 10/9-102 ..........................................................................................21

20 Ill. Admin. Code §§ 701.40, 701.90……………………………………..5, 9, 11, 13

Fed. R. Civ. P. 26 ............................................................................................21

Fed. R. Civ. P. 37 ............................................................................................21

Fed. R. Civ. P. 50 ....................................................................................passim

Fed. R. Evid. 403 ...................................................................................... 15, 21

Fed. R. Evid. 702 ……………………………………………………………………...17

# INTRODUCTION

Appellees ask this Court to affirm by reframing this appeal as a medical-malpractice case about Bates and Braco. That is not the *Monell* claim Plaintiff seeks to reinstate. The preserved claim is structural; it is systemic: Macon County knowingly operated its jail without written healthcare-policy safeguards for diabetic detainees, without written emergency-transport procedures, and without a written ambulance-authority rule. The County stipulated to those absences. App. II 74-76 (Tr. Vol. 1 at 66-68). Sheriff Schneider confirmed that nothing was specifically set up for diabetic detainees and that no diabetes-related policies, protocols, or procedures existed from 2011 through 2015. App. II 77-81 (Tr. Vol. 1 at 151-55). DMH's corporate representative testified that, as the most knowledgeable DMH representative regarding jail policies, protocols, and procedures, she was not aware of any healthcare policies at the jail in 2015, whatsoever, and was not aware of any diabetes protocols in 2015 or the preceding years. App. II 109-10 (Tr. Vol. 4 at 722-23).

Those facts are not isolated malpractice facts. They are municipal-structure facts. They show that this case does not involve a functioning jail healthcare policy that was negligently implemented. It involves a jail operating in a policy vacuum for a known chronic condition in a setting where detainees cannot self-monitor, self-medicate, call their physician, or summon emergency care.

That reality defeats Appellees' central response. Hiring DMH did not make the County's own omissions disappear. Illinois jail standards in force in 2015

required all jails to provide a competent medical authority to ensure *documented* medical services, including collection and diagnosis of complaints, treatment, prescription of medication and special diets, and hospitalization arrangements. 20 Ill. Admin. Code § 701.90(a)(1)-(4) (Source: Amended at 38 Ill. Reg. 18859, effective October 1, 2014)

The standards also required the admitting officer to determine by questioning whether a detainee had a condition requiring medical attention, including diabetes; required referral to healthcare personnel when a detainee showed or reported unusual physical distress; required medication verification and administration; and required emergency medical complaints to receive attention as quickly as possible. *Id*. §§ 701.40(i)(1)(A), (i)(3), (j)(1)-(2), 701.90(d)(3). Plaintiff does not cite these regulations as independent constitutional claims. They show objective obviousness: diabetic intake, medication verification, emergency referral, and hospitalization arrangements are basic jail medical functions, not matters of optional contractor grace.

The district court took that structural claim from the jury only after excluding the experts who would have explained why those omissions mattered medically and operationally. It then instructed the battery jury using federal qualified-immunity language and allowed health and financial-condition testimony that invited sympathy before liability was decided. Those rulings require reversal.

**ARGUMENT**

I.  **Appellees' waiver arguments do not defeat Plaintiff's preserved structural Monell theory**

2

Appellees' first defense is waiver. They say Plaintiff waived any theory based on emergency transport because her Rule 50 response did not list "lack of written emergency-transport policy" as a separate heading. Appellees' Br. 16-17. That argument fragments a single theory into artificial parts.

Plaintiff's theory is lack of coordinated diabetic care: intake, medication verification, monitoring, physician review, emergency escalation, and transport. Emergency transport is not a new theory. It is the escalation component of the same coordinated-care theory. It was pleaded, developed, stipulated, argued in response to Rule 50, and addressed by the district court. Again, the evidence elicited at trial was that in 2015 there were no healthcare policies at the jail, whatsoever.

The amended complaint alleged that Macon County failed to train, monitor, supervise, or ensure proper protocols for summoning emergency medical personnel, and alleged practices discouraging necessary medical rescue. R.31. At summary judgment, the district court rejected defendants' argument that Plaintiff had not pleaded policies or lack of policies relating to medical care, emergency medical personnel, diabetic protocols, and medical-care training. App. II 20-30. At trial, the parties stipulated that the jail had no written diabetic protocols and no written emergency-transport procedures. App. II 74-76. Plaintiff's Rule 50 response expressly relied on the absence of diabetic protocols, lack of coordinated care, absence of emergency-transport procedures, and absence of any written policy identifying who could call an ambulance. R.375 at 5-6, 28-31.

3

The district court understood the theory. Its Rule 50 order summarized Plaintiff's position as including "failure to coordinate care for diabetic pre-trial detainees," and then described Plaintiff's argument that Carter's care was fragmented, disorganized, and lacked any mechanism to ensure physician oversight or emergency transport. App. I 17, 25-26. That is preservation, not waiver. *Barnes* and *Puffer* do not help Appellees. Those cases prevent reversal on theories not presented below. See *Barnes v. City of Centralia, Ill.*, 943 F.3d 826, 832 (7th Cir. 2019); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Plaintiff presented this theory below repeatedly: in the pleadings, at summary judgment, in the stipulations, at trial, and in the Rule 50 response. A party does not waive evidence supporting a preserved theory because the evidence also could have been isolated into a separate subheading.

Nor does Appellees' description of the district court's frustration change preservation. The court's frustration arose as the case narrowed after settlement, qualified immunity, and in limine rulings. But the structural core remained constant: Macon County operated the jail without coordinated safeguards for diabetic detainees and emergency medical escalation. Refinement in response to narrowing rulings is not waiver.

## II.  A reasonable jury could find deliberate indifference and moving-force causation

The best answer to Appellees' "malpractice only" framing is the record itself. This case does not involve a flawed healthcare system; it involves the absence of

written jail healthcare policies. The parties stipulated that, in 2015, the jail had no written policies, protocols, or procedures governing diabetic care or emergency transport. App. II 74-76. Sheriff Schneider confirmed that no diabetes-related policies, protocols, or procedures existed at the jail from 2011 through 2015. App. II 77-81; Tr. Vol. 1 at 151-55. DMH's own corporate representative testified that she was not aware of any healthcare policies at the jail in 2015 and was not aware of any diabetes protocols in 2015 or the preceding years. App. II 109-10. This record permits a jury to find not isolated negligence, but structural system failure: operation of a custodial facility without written healthcare-policy safeguards for a known, life-threatening chronic condition.  This is a failure on the most basic level.

Rule 50 did not allow the district court to choose the County's preferred inferences. The court was required to view the evidence in Plaintiff's favor and draw reasonable inferences for Plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). A reasonable jury could find both deliberate indifference and moving-force causation.

### A.     Plaintiff's theory is not respondeat superior

Appellees repeatedly say Plaintiff seeks to hold Macon County liable for Bates's and Braco's medical decisions. Plaintiff does not. The claim concerns Macon County's own jail structure: no written diabetic protocol; no written emergency-transport procedure; no written ambulance-authority policy; no jail-specific healthcare policies known to DMH's corporate representative; and a policymaker

who knew nothing was specifically set up for diabetics from 2011 through 2015. App. II 74-81, 109-10.

Those facts are institutional. They concern how the jail was designed to function. Under *Monell*, inaction can constitute municipal action when it reflects a conscious decision not to take action. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc); *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022).

Appellees answer that the Sheriff could rely on medical professionals. That principle has a role, but not the role Appellees assign to it. A sheriff need not practice medicine. But a jail cannot avoid constitutional accountability by contracting for healthcare while maintaining no written system for recurring medical risks. This Court has repeatedly recognized that a government entity cannot shield itself from § 1983 liability by contracting out medical care. *King v. Kramer*, 680 F.3d 1013, 1020-21 (7th Cir. 2012); *Daniel v. Cook County*, 833 F.3d 728, 736 (7th Cir. 2016); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-29 (7th Cir. 2004).

The Illinois jail standards reinforce that point. In 2015, all jails were required to provide a competent medical authority to ensure documented services including diagnosis of complaints, treatment of ailments, prescription of medication and special diets, and hospitalization arrangements. 20 Ill. Admin. Code § 701.90(a)(1)-(4) (Source:  Amended at 38 Ill. Reg. 18859, effective October 1, 2014)

The Code also required admission questioning about medical conditions requiring attention, expressly including diabetes, and referral to healthcare personnel when a detainee showed or reported unusual physical distress. Id. § 701.40(i)(1)(A), (i)(3). Plaintiff does not argue that a regulatory violation equals a constitutional violation. The regulations show that the need for intake, medication, treatment, and hospitalization mechanisms was not invisible to non-medical jail administration. The need was built into jail operations.

The question for the jury was not whether Schneider should have diagnosed DKA or prescribed insulin. It was whether the County could knowingly operate a jail with no written diabetic intake, monitoring, or escalation safeguards at all. That is a municipal inaction theory, not respondeat superior.

### B.  The record permitted an obvious-risk finding

Appellees contend that Plaintiff failed to show notice because there was no prior pattern of similar constitutional violations. But a prior pattern is not the only path to *Monell* liability. In the narrow category of obvious-risk cases, deliberate indifference may be inferred when the need for action is so obvious and the consequences so predictable that failure to act reflects conscious disregard. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409-10 (1997); *J.K.J. v. Polk County*, 960 F.3d 367, 380 (7th Cir. 2020) (en banc); *Glisson*, 849 F.3d at 381-82.

A reasonable jury could find this case falls within that category. Diabetes is common. Schneider understood diabetes was a common chronic condition. App. II

77-81. In custody, diabetic risk is not managed by the detainee. The jail controls intake documentation, medication access, medical referral, observation, housing placement, and transport. Yet the County stipulated there were no written diabetic protocols and no written emergency-transport procedures. App. II 74-76. Schneider confirmed that nothing specific was set up for diabetics, and that the absence existed year after year. App. II 77-81; Tr. Vol. 1 at 151-55. Fahey confirmed she was not aware of healthcare policies at the jail or diabetes protocols. App. II 109-10.

That evidence is materially stronger than Appellees' "isolated malpractice" framing. A single nurse may commit malpractice in a functioning system. But here the jury could find the system lacked written healthcare-policy structure for diabetic care altogether. And because the relevant Illinois jail standards required admission inquiry into diabetes, referral for distress, medication verification and administration, emergency attention, diagnosis, treatment, and hospitalization arrangements, the need for coordination was not a medical luxury. It was a basic feature of jail medical care. 20 Ill. Admin. Code §§ 701.40(i)(1)(A), (i)(3), (j)(1)-(2), 701.90(a), (d)(3).

Appellees rely on the district court's *Glisson* distinction: that *Glisson* involved Corizon, a medical contractor, while this case involves a sheriff who hired a medical provider. Appellees' Br. 22-24; App. I 26-29. That distinction misreads *Glisson*. *Glisson* is not a rule about who the defendant is. It is a rule about what type of municipal conduct can constitute policy: a conscious decision not to adopt coordinated care mechanisms where the need for coordination is obvious. 849 F.3d

8

at 379-82. Nothing in *Glisson* confines that principle to private contractors. Indeed, *Monell* itself applies to governmental entities, and *King*, *Daniel*, and *Woodward* reject the notion that contracting out medical care eliminates governmental responsibility.

Nor does Appellees' "non-medical sheriff" argument defeat obviousness. The relevant need was not a nuanced medical decision about insulin dosage. It was the need for a written process when a detainee reports diabetes, when medication must be verified and administered, when symptoms show distress, and when emergency transport is required. Those are jail-administration issues as well as medical issues. The Illinois Administrative Code made them jail-administration issues by requiring all jails to ensure those services were available. 20 Ill. Admin. Code § 701.90(a).

Appellees also argue that *Glisson* involved multi-facility treatment and many providers while Carter was in one jail. That makes this case simpler, not weaker. Plaintiff does not need to prove cross-facility coordination. She needs to prove that a diabetic detainee entering a single jail needed coordinated intake, monitoring, medication verification, physician review, and emergency escalation. The record permitted a jury to find that none of that was governed by written policy.

Finally, the absence of prior similar incidents does not make the risk non-obvious. A jail does not get one free preventable death before the Constitution requires basic safeguards for a recurring risk. *Woodward*, 368 F.3d at 929. The jury could find that leaving diabetic care to ad hoc discretion in a policy vacuum made delayed recognition and emergency escalation highly predictable.

### C. The record permitted a moving-force causation finding

Appellees next argue that Plaintiff offered only but-for causation and failed to prove that a written policy would have changed Bates's or Braco's conduct. Appellees' Br. 19-24. That imposes a standard *Monell* does not require. Plaintiff had to show a direct causal link between the municipal omission and the constitutional deprivation. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235-36 (7th Cir. 2021). She did not have to draft the policy that should have existed and prove exactly how each actor would have responded to every provision. Appellees' reliance on *Thomas* is misplaced for the same reason. *Thomas* required a causal link, but it did not require direct testimony from every actor that a different policy would have changed that actor's conduct; *Monell* causation may be proven from the record as a whole. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 306-07 (7th Cir. 2010).

The causal inference was concrete. Carter reported diabetes at intake. The jail had no written diabetic protocol requiring immediate provider review, baseline glucose testing, scheduled monitoring, or escalation triggers. App. II 74-76; R.375 at 5-15. The Illinois jail standards required admission officers to identify diabetes through questioning and required medications to be verified and administered as prescribed. 20 Ill. Admin. Code § 701.40(i)(1)(A), (j)(1)-(2). Yet Carter's diabetic condition was not managed through any written pathway. He complained of vomiting and exhaustion; developed abnormal vital signs; was seen by a physician for a cold without his diabetes being addressed; registered glucose at or above 500 mg/dL; and died from DKA. App. II 74-76; R.375 at 9-15.

That is not speculation. It is the precise harm that diabetic intake, monitoring, and escalation safeguards exist to prevent. A jury could find that the absence of those safeguards was a moving force behind delayed recognition and delayed emergency response.

Zawitz's excluded opinions supplied the medical bridge. He opined that Carter's death was preventable; that reasonable intake screening likely would have led to immediate provider review because Carter self-reported insulin-requiring diabetes; that baseline and scheduled glucometer assessments likely would have detected elevated glucose before DKA developed; that abnormal July 17 vital signs reflected critical deterioration; and that timely assessment, insulin, potassium, and IV fluids more likely than not would have prevented death. App. II 16-19. Plaintiff also proffered limited questions for Zawitz on diabetes, DKA, symptoms, treatment, glucose readings, and Carter's last chance of survival. App. II 51-52.

Appellees cannot defend Rule 50 by ignoring the expert evidence the court excluded. The district court barred the testimony that would have explained the medical and systemic causal link, then ruled that the link was missing. App. I 23-35; App. II 48-52, 61-73. That sequence is not harmless.

Nor do Bates's and Braco's acts automatically sever causation. In any failure-to-coordinate healthcare case, medical staff will make decisions inside the deficient system. If those decisions automatically broke causation, *Glisson* could not exist. The jury was entitled to decide whether Bates's and Braco's failures were isolated

11

causes or predictable manifestations of a jail operating without written diabetic-care and emergency-escalation safeguards.

### III. The categorical exclusion of Pearson and Zawitz was an abuse of discretion and infected the Rule 50 ruling

Appellees defend the expert ruling as though the district court merely excluded legal conclusions and video narration. Appellees' Br. 24-28. Plaintiff does not need reversal of those narrower rulings. The problem is the later categorical exclusion of both experts. Appellees' deficient-briefing waiver argument also fails. Plaintiff identified the excluded experts, the exclusion orders, the hearing transcript, the reports, the proposed narrowed questions, and the prejudice to the *Monell* claim. App. II 2-19, 44-52, 61-73. Appellees responded on the merits. The issue is preserved.

### A. The district court excluded far more than legal conclusions

The district court first barred three categories of testimony: undisclosed opinions that Macon County had a legal duty to adopt or change policies; expert narration of video evidence; and legal conclusions such as "deliberately indifferent," "objectively unreasonable," or "unconstitutional." App. II 44-47. Those limits are not the core issue. The court then granted Motion No. 50 and excluded Pearson and Zawitz entirely, reasoning that their testimony would amount to "expert gloss," would be cumulative, and risked "impermissible backsliding" into respondeat superior. App. II 48-50.

At trial, Plaintiff sought clarification whether the experts were barred completely or only from certain subjects. App. II 61-73. The court confirmed the exclusion. Plaintiff then submitted twenty-six narrowed questions for Zawitz, covering diabetes, DKA, symptoms, treatment, vital signs, glucose values, suffering, and last chance of survival. App. II 51-52; Tr. Vol. 2 at 194-95. The court still refused to allow the testimony. Tr. Vol. 2 at 234-39.

That was not ordinary gatekeeping. The court did not find Pearson unqualified. It did not find Zawitz unqualified. It did not find their methods unreliable. It did not find their medical or correctional-health opinions unsupported. The ruling rested on Rule 403 and doctrinal concern that Plaintiff's *Monell* theory might blur into respondeat superior. App. II 48-50, 61-73.

The appropriate response to that concern was limitation and instruction, not exclusion. The court could bar legal labels, final-policymaker opinions, and video narration. It could instruct the jury that Macon County could not be held liable merely because DMH, Bates, or Braco was negligent. What it could not do was prevent Plaintiff from presenting expert testimony explaining why the admitted absence of diabetic-care and emergency-escalation safeguards mattered.

### B. The excluded testimony was central to the elements the district court found missing

Pearson's report addressed correctional-health system structure, intake screening, chronic-care coordination, RN/LPN staffing, contractually required training, quarterly reporting, deputy training, and the absence of policies and

13

protocols. App. II 2-15. That testimony would have helped the jury understand whether the jail had a coordinated system for identifying and escalating chronic medical risks.

Zawitz's report addressed the progression of DKA, the significance of abnormal vital signs and glucose readings, preventability, and the time-sensitive consequences of failing to recognize and treat Carter's deterioration. App. II 16-19. Plaintiff's proposed narrowed examination asked basic medical questions: what diabetes is; what DKA is; whether DKA is a medical emergency; how it presents clinically; what a glucose level of 500 means; what happens if DKA is untreated; and when Carter's last chance of survival occurred. App. II 51-52.

Jurors could read a stipulation that no diabetic protocols existed. They could not be expected to know how DKA develops, what tachycardia and low blood pressure mean in a diabetic detainee, why vomiting matters, why a maxed-out glucometer is dangerous, or how scheduled glucose checks and escalation triggers function in correctional chronic-care systems. That is not "expert gloss." It is Rule 702 assistance on foreseeability and causation.

### C. The error was not harmless

Appellees argue the exclusion was harmless because Plaintiff still could not prove *Monell*. Appellees' Br. 27-28. That argument is circular. The excluded testimony went directly to the elements the district court found insufficient.

The Rule 50 order faulted Plaintiff for failing to show deliberate indifference and moving-force causation. App. I 23-35. Pearson would have explained the

correctional-health consequences of operating without coordinated diabetic-care safeguards. Zawitz would have explained the medical consequences of delayed recognition and why earlier monitoring and escalation likely would have prevented death. The district court excluded that explanatory evidence and then found the explanation lacking.

Because the expert ruling materially narrowed the record on which Rule 50 was granted, the Rule 50 judgment cannot be affirmed as harmless.

## IV. The battery instruction imported federal qualified-immunity doctrine into an Illinois battery claim

Appellees argue that the challenged instructions were proper because West's reliance on Nurse Bates was relevant to his state of mind. Appellees' Br. 28-35. Plaintiff does not dispute that West could argue reliance. The error is that the district court converted that defense argument into an instruction drawn from federal qualified-immunity doctrine.

The jury's task was to decide Illinois battery. The court instructed in part that Plaintiff had to prove West intended harmful or offensive contact, made unauthorized harmful or offensive contact, caused injury, and acted willfully and wantonly. App. II 53-57, 124-25. Illinois defines willful-and-wanton conduct as conduct showing an actual or deliberate intention to cause harm or, if not intentional, utter indifference to or conscious disregard for the safety of others. 745 ILCS 10/1-210; 745 ILCS 10/2-202.

But the court then added two non-pattern instructions: "Correctional officers may trust jail medical professionals to provide inmates with appropriate medical care," and "Correctional officers are not constitutionally obligated to override the judgment of medical professionals unless they have reason to know that an inmate is receiving inadequate treatment," even when the inmate is in obvious distress and medical staff has accused him of faking a real illness. App. II 124-25.

Those propositions come from *McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022), which addressed qualified immunity on a federal Fourteenth Amendment medical-care claim. It did not define Illinois battery. It did not decide West's state-law liability. It did not approve West's physical conduct. It did not hold that reliance on a nurse is a legal instruction limiting Illinois willful-and-wanton liability.

The district court itself recognized that distinction before trial. In denying West's motion to reconsider, it explained that West's ability to rely on Bates for qualified-immunity purposes was not identical to or coextensive with his ability to rely on her in defending against state-law battery for physical contact he affirmatively made with Carter. App. II 40-43. The final charge collapsed that distinction.

The prejudice was concrete. West testified that Bates said Carter was faking. Tr. Vol. 2 at 204, 209. He also admitted he intentionally put his foot on Carter's hand and applied body weight to try to "get a raise out of him." Tr. Vol. 2 at 211-12. The jury's question was whether that physical conduct was harmful or offensive and willful and wanton. Instead, the court told the jury that officers may trust medical

16

professionals and need not override them even when an inmate is in obvious distress and accused of faking a real illness. App. II 124-25. The instruction tracked the defense theory and gave it the force of law.

Appellees say the Illinois instructions were also given. That does not cure the error. A correct instruction can be undermined by an additional instruction that introduces the wrong legal framework on a central issue. The Seventh Circuit reviews whether the final result, read as a whole, completely and correctly states the law. *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1016 (7th Cir. 2018); see also *Artis v. Santos*, No. 22-2619, 2024 WL 1020991, at *4 (7th Cir. Mar. 8, 2024). Here, the final result did not correctly state Illinois battery law because it inserted federal constitutional deference language into a state-law willful-and-wanton claim.

There is at least a reasonable likelihood that the jury evaluated West's battery liability through the wrong legal lens. See *Boyde v. California*, 494 U.S. 370, 380 (1990). The battery verdict should be vacated.

### V. West's health and financial-condition testimony improperly invited sympathy before liability was decided

Appellees defend West's health and financial testimony as relevant to punitive damages. Appellees' Br. 35-43. That defense does not justify what occurred. After Rule 50, the only claim submitted to the jury was Illinois battery. Before the jury decided liability, West testified that he had suffered a stroke and heart attack, required a wheelchair, lived on Social Security and a pension, had a mortgage, and had no financial investments. Tr. Vol. 6 at 917-20. Plaintiff objected repeatedly on relevance and disclosure grounds. Id. The court allowed the testimony, reasoning

that "some knowledge of the financial state of the defendant is appropriate" in connection with damages. Tr. Vol. 6 at 919-20.

The ruling was wrong in both timing and scope. First, West's health condition was not financial-condition evidence. A stroke, heart attack, and wheelchair do not establish wealth, ability to pay, or the proper measure of punitive damages. They invite sympathy. The district court recognized Plaintiff "ha[d] a point" and allowed only "surface" questions, but the surface facts were themselves prejudicial. Tr. Vol. 6 at 918.

Second, even if financial condition could become relevant to punitive damages, it was not relevant to liability. *Kemezy v. Peters*, 79 F.3d 33, 36-37 (7th Cir. 1996), explains that financial condition may bear on punitive damages; it does not authorize poverty-themed evidence before the jury decides liability. The court could have bifurcated punitive-damages evidence, deferred it until after a liability finding, or given a limiting instruction. It did none of those things.

Third, Appellees' reliance on Illinois's punitive-damages indemnification limits misses the point. Sections 2-102 and 2-302 may explain why narrowly tailored financial evidence could become relevant if the jury reached punitive damages against West individually. 745 ILCS 10/2-102, 2-302. They do not make health problems and financial hardship relevant to whether West committed battery. And Macon County remained responsible for compensatory damages under respondeat superior and 745 ILCS 10/9-102; the court told the parties that Macon County was still in the case for that purpose. Tr. Vol. 6 at 908-09.

18

Appellees' Rule 26 response also misses the central point. Even if West was not required to disclose a damages computation under Rule 26(a)(1)(A)(iii), that does not make the evidence relevant, properly timed, or nonprejudicial. Plaintiff's nondisclosure objection underscored unfair surprise; the primary admissibility problem remains Rule 403 and the use of sympathy evidence before liability. See Fed. R. Civ. P. 26, 37; Fed. R. Evid. 403.

Appellees say the jury never reached damages, so any error was harmless. That misunderstands the prejudice. Plaintiff's concern is not that damages were miscalculated. It is that sympathy evidence affected the threshold liability decision. The no-liability verdict does not prove harmlessness; it is consistent with the prejudice. Appellees also say Plaintiff waived the health-evidence challenge. Plaintiff objected when counsel asked about West's health, and the court partially sustained but allowed the core sympathy facts. Tr. Vol. 6 at 918. The issue is preserved.

At minimum, this error compounded the instructional error. The jury was given federal medical-deference language and then heard sympathy-inducing testimony about West before deciding whether his intentional contact was willful and wanton. In a case turning on intent, force, and conscious disregard, those errors were not harmless.

## VI. The cumulative effect of these errors reinforces the need for reversal

Even if any single error were viewed in isolation as close, the sequence was not. The district court excluded the experts who would explain the structural *Monell*

theory; granted Rule 50 because the structural theory lacked sufficient obviousness and causation proof; instructed the remaining battery jury with federal qualified-immunity language; and allowed health and financial sympathy evidence before liability. The cumulative effect was to prevent the jury from deciding the case under the correct evidence and law.

## CONCLUSION

Plaintiff respectfully requests that this Court reverse the Rule 50 judgment, vacate the battery verdict, and remand for a new trial on the *Monell* and Illinois battery claims. At minimum, the Court should vacate the Rule 50 judgment and remand the *Monell* claim for trial with properly limited expert testimony.

Respectfully submitted,

/s/ Rahsaan A. Gordon
Counsel for Appellant

Rahsaan A. Gordon
LAW OFFICES OF RAHSAAN A. GORDON
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: (312) 422-9500
Facsimile: (312) 422-9507
rg@attorneygordon.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32(c) because it contains 4655 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 12-point font.

Dated: April 22, 2026

Respectfully submitted,

/s/ Rahsaan A. Gordon
Counsel for Appellant

## PROOF OF SERVICE

I hereby certify that on April 22, 2026, I electronically filed the foregoing Reply Brief of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.

All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: April 22, 2026

Respectfully submitted,

/s/ Rahsaan A. Gordon
Counsel for Appellant